DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[Sac. No. 367.   In Bank.—December 18, 1898.]

CHARLES A. GLOCK, Respondent, v. HOWARD AND WILSON COLONY COMPANY, Appellant.

123    1
124   258
125   220

123    1
133   445

123    1
134   102

123    1
148   608

123    1
149   614

VENDOR AND PURCHASER—TIME OF ESSENCE OF CONTRACT—DEFAULT OF PURCHASER—ACTION TO RECOVER PAYMENTS MADE.—Under a contract for the sale of real estate, in which time is made of the essence of the contract and performance by the purchaser is made a condition precedent to a conveyance, and upon his breach of the contract he is declared to forfeit all rights thereunder, and all moneys paid thereon, the purchaser cannot, after his default, without excuse shown therefor, by a tender of the amount due, acquire either an equitable or a legal right to maintain an action to recover back the moneys paid under the contract.

ID.—RESCISSION—RIGHT OF REPAYMENT.—It is only when, after breach by the purchaser of a contract of sale making time of its essence, the vendor agrees to a mutual abandonment and rescission of the contract, that the purchaser in unexcused default would be entitled to repayment of his money.

ID.—DEFAULTING PURCHASER UNABLE TO RESCIND.—The purchaser cannot, after his own default under such a contract, put the vendor in default by a mere tender; nor can he elect to consider the contract at an end, and recover what he has paid thereon, when the vendor has not abandoned the contract, but stands upon its terms and conditions.

ID.—REFUSAL OF VENDOR TO CONVEY NOT A RESCISSION.—The refusal of the vendor to accept a tender made by a purchaser in default under a contract making time of its essence, and to convey to the purchaser after such default, does not effect a rescission of the contract, nor entitle the purchaser to recover the money paid.

CXXIII CAL.—1                    (1)

ID.—EQUITY FOLLOWS THE LAW, WHEN TIME IS OF ESSENCE.—Where time is expressly made of the essence of a contract for the purchase of land, equity will not ignore such provision, but follows the law, and will neither make a new contract for the parties, nor violate that which they have entered into; nor will it relieve a purchaser who has made unexcused default under such a provision, and has not fulfilled conditions precedent to the vesting of his right of action.

ID.—RIGHT OF VENDOR TO RETAIN PURCHASE MONEY—IMMATERIAL CLAUSES —FORFEITURE—LIQUIDATED DAMAGES.—The right of the vendor to retain the purchase money paid after unexcused default of the purchaser under such contract, is independent of any express clauses in the contract for forfeiture of rights, or for retention of the purchase money as liquidated damages. Such express clauses are but declarations in express terms of the legal rights of the parties under such a contract, without them; and their validity as express clauses is immaterial.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinions.

Raleigh E. Rhodes, for Appellant.

Robert L. Hargrove, for Respondent.

HENSHAW, J.—This action was brought to recover from the corporation defendant moneys paid by plaintiff on a contract for the purchase and sale of a tract of land situated in the then county of Fresno, now in the county of Madera.

Plaintiff had judgment, and defendant appeals therefrom and from the order denying its motion for a new trial. The appeal is supported by a bill of exceptions. The facts briefly stated are the following:

On the twenty-first day of February, 1891, the defendant, as party of the first part, entered into a written agreement with the plaintiff, as the party of the second part, whereby said party of the first part agreed that upon the performance of the covenants to be kept by the plaintiff it would convey to him a tract of five acres of land situate in the county of Fresno, and certain water rights, all of which are fully described. Plaintiff was to pay therefor six hundred and twenty-five dollars, as follows: One hundred and twenty-five dollars down, the receipt whereof

was acknowledged; one hundred and twenty-five dollars on or before February 21, 1892, and a like sum annually until and including February 21, 1895, with interest payable annually on all deferred payments at six per cent per annum. Plaintiff also by the agreement requested the defendant to plant the tract of land to fruit trees, and to cultivate them for three years from February 21, 1891, for all of which plaintiff was to pay three hundred and seventy-five dollars, as follows: Sixty-two dollars and fifty cents on execution of the agreement, the receipt whereof was acknowledged, and a like sum semi-annually on the twenty-first days of August and February, until and including August 21, 1893.

Plaintiff further agreed to pay all taxes, state and local, all water rates and dues, assessed or due and payable on said property from and after the date of the agreement. Time was made of the essence of the contract, and performance by the plaintiff was made a condition precedent whereon depended the agreement of defendant to convey, and, if plaintiff failed to perform his covenants, defendant was to be released from all obligations to convey, and plaintiff was to forfeit all moneys paid and all rights under the agreement, and the sums so paid were to be treated not as a penalty, but as liquidated damages.

Plaintiff paid on account of the agreement the sum of three hundred and eighty-two dollars and fifty cents, viz., two payments of one hundred and twenty-five dollars and interest, as provided in the agreement, and two payments of sixty-two dollars and fifty cents and interest, on account of the planting and care of the trees, which sums were accepted by defendant.

On the ninth day of August, 1895, plaintiff in writing tendered to defendant all sums due the latter on account of the agreement, and offered to comply with all the terms and conditions of his contract, demanded a deed, and tendered to defendant a deed for its execution. The tender also contained a further demand that if defendant refused to accept the sum of one thousand dollars tendered, and to execute a deed, that defendant return to plaintiff the sum of three hundred and eighty-two dollars and fifty cents paid it on account of the contract, all of which was refused by defendant. Plaintiff has never been in possession of the property nor any part thereof.

The complaint contains two counts. The foregoing facts are pleaded in the first count. By the second count the plaintiff seeks a recovery as for money had and received.

By the first count, which seems to have been framed upon some theory of equitable relief, the averments of the plaintiff amount to this, and to no more; that he entered into a contract for the purchase of land; that he made certain payments according to his covenants; that he defaulted in later payments; that three years and a half after his first default, and more than six months after default in the time of final payment, he made a tender to defendant of the full amount due under the contract, which tender was refused; that by the express declaration of the parties time was made essential in the contract, and that payment of the moneys upon time was a condition precedent to the right to a conveyance; that for failure to pay upon time defendant by the terms of the agreement is released from all obligation to convey, and the moneys paid are forfeited as liquidated damages; yet, notwithstanding these covenants, by a tender made and refused long after plaintiff's default, defendant is himself in some way placed in default, and plaintiff may recover his money. This, moreover, without the slightest averment or the shadowiest proof in excuse of plaintiff's breach of contract.

The case stands, then, upon this proposition, that under a contract for the sale of realty, where time is of the essence, a vendee, after breach of covenant to pay, performance of which is made a condition precedent to his right to a conveyance, may, without excusing his default, by a tender of the amount due, acquire some legal or equitable right which warrants his recovery of the moneys he has paid.

Respondent insists that his position finds abundant support in the line of cases beginning with *Drew v. Pedlar*, 87 Cal. 443; 22 Am. St. Rep. 257. The trial judge evidently entertained the same view. If this be the law, it is important that it be so declared without equivocation. If it be not, then it is equally important that the misunderstanding and doubts of the profession should be promptly removed. Land is one of the very highest forms of property. Contracts for its sale are required to be solemnly evidenced by signed writings. The value of

such sales amounts to untold millions of dollars annually. It becomes a matter of the utmost consequence, then, that the reciprocal rights and duties of vendors and vendees under the conditions and covenants usually found in such contracts—conditions and covenants in such general use that their employment may be said to be universal—should be clearly defined and understood.

It is in this view alone that this case becomes important, for the amount involved is only about three hundred and eighty dollars. But the doubts which seem to exist concerning legal and equitable rights under such contracts demand for their removal a somewhat extended examination of the subject.

It may be as well at the outset to quote the code provisions bearing upon the question. Their consideration will arise as the discussion proceeds.

"The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, and the expenses properly incurred in preparing to enter upon the land." (Civ. Code, sec. 3306.)

"The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him." (Civ. Code, sec. 3307.)

"Every contract by which the amount of damage to be paid, or other compensation to be made for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section." (Civ. Code, sec. 1670.)

"The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when from the nature of the case it would be impracticable or extremely difficult to fix the actual damage." (Civ. Code, sec. 1671.)

"Except as otherwise provided in this article, the specific performance of an obligation may be compelled." (Civ. Code, sec. 3884.)

"It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation, and that the breach of an agreement to transfer personal property can be thus relieved." (Civ. Code, sec. 3387.)

"A contract, otherwise proper to be specifically enforced, may be thus enforced, though a penalty is imposed or the damages are liquidated for its breach, and the party in default is willing to pay the same." (Civ. Code, sec. 3389.)

Of any contract for the sale of land there may be a breach, either by the vendee refusing to pay, or by the vendor refusing to convey. Actions at law for the breach of contracts are as old as the law itself. As the common law long antedated the system of equity jurisprudence, there was a time when the only recovery available to the injured party was a recovery in damages—money, for money is the only recompense which the law affords for a private injury. The establishment of equity jurisprudence afforded a different redress, one unknown to the law. Acting upon the wrongdoer, it forced him specifically to perform his contract. This, however, but increased the suitor's remedies, and left it optional with him in proper cases either to rest upon his legal action for damages, or to seek in equity the relief of compulsory performance. Even so, however, there still were, and there must always be, breaches of such contracts for which equity is powerless to afford redress. Thus, if a vendor contracts to convey land to which he has no title, equity cannot compel him to obtain title, and the vendee must of necessity be limited to his action at law. If there were not such an action and a rule and measure of damage under it, he would be remediless. Again, it is to be remembered that equity, designed but to supplement the deficiencies of the law, will withhold its aid where the law affords full redress. For both these classes of cases, then—that is to say, for those where the law is sufficient, and for those where equity is powerless to aid—the injured party must seek legal redress.

The two sections of the code first above-quoted deal with the legal redress to which the party is entitled, either at his

option or from the compulsion of circumstances. It is true that under our system the court of law and the court of equity are merged into one, and that a party is awarded such legal or equitable redress as a simple pleading of ultimate facts shows that he merits; but, nevertheless, the distinctions between the kinds of redress and the modes in which they are administered cannot and are not sought to be obliterated.

It was well recognized, however, that the damages of the law afforded inadequate compensation for the breach of many contracts. In contracts for the sale of chattels, for a breach, the vendee usually (though not always) received adequate compensation in money, since with the money he could buy another article identical in kind and value. In contracts for the sale of land it was otherwise. No other piece of land upon the earth could duplicate that which the purchaser desired. *Pretium affectionis* was an important element of the vendee's contract, and this could not be measured. A pecuniary recompense, then, failed to meet the case.

On the part of the vendor, since he is selling his land for a money price, it would appear logically that an action at law for the recovery of damages, upon a breach of the vendee, would answer the requirements of his case, and that he should not be allowed, therefore, to resort to equity for relief. But mutuality is an essential element in contracts for which specific performance may be decreed, and, moreover, as was said by Lord Eldon in expressing his dissatisfaction with the relief against forfeitures granted by equity: "The result of experience is, that where a man having contracted to sell his estate is placed in this situation that he cannot know whether he is to receive the price when it ought to be paid, the very circumstance that the condition is not performed at the time stipulated may prove his ruin, notwithstanding all the court can offer as compensation." (*Hill v. Barclay*, 18 Ves. 59.) It may frequently be of the utmost consequence to the vendor that he should have the right to enforce the contract and receive payment for his land in money, since he may much prefer the full purchase price to retaining the estate and receiving smaller monetary compensation by way of damages. And, finally, it is to be considered that during the life of such contracts the vendor foregoes his right to

convey to another. He may thus lose an opportunity to make an advantageous sale, and, while this right is admittedly valuable, it is extremely difficult to put a price upon it. For these reasons, the equitable action for specific performance is as available to the vendor as to the vendee. (Pomeroy on Specific Performance, secs. 6-12.)

From this difficulty in meting out adequate compensation at law arose two things: 1. The parties by convention were allowed to agree upon the value of the injury occasioned by the breach as liquidated or stipulated damages. These damages were not only recoverable at law, but courts of equity would not and could not relieve against them. (Story's Equity Jurisprudence, sec. 1318; *Williams v. Green*, 14 Barb. (Ark.) 315; *Westerman v. Means*, 12 Pa. St. 97.) 2. Equity immediately took cognizance of the violation of such contracts, and made whole the injured party by decreeing specific performance. It also did the same in the case of contracts for the sale of chattels, where the particular circumstances warranted it. Thus, in *Center v. Davis*, 38 Cal. 450, it is said: "The jurisdiction of a court of equity to decree specific performance does not turn at all upon the question whether the contract relates to real or personal property, but altogether upon the question whether the breach complained of can be adequately compensated in damages. If it can, the plaintiff's remedy is at law only; if not, he may go into a court of equity, which will grant full redress by compelling specific performance on the part of the defendant. Accordingly, while it is a general rule that contracts for the sale and transfer of personal property will not be specifically enforced, yet, if there are circumstances in view of which a judgment for damages would fall short of the redress which the plaintiff's situation demands . . . . equity will decree specific performance." In *Krouse v. Edwards*, 110 Cal. 638, this court was again called upon to consider the question, and decreed the return of specific stock pledged, refusing to allow compensation in money in lieu thereof, because of the peculiar circumstances which rendered damages inadequate and equitable relief necessary. But the presumption is, that damages are adequate for the breach of a contract to transfer personal property, and are inadequate, for the reasons we have been considering, for the breach of a contract to convey real property. This is the

precise declaration of section 3387 of our Civil Code. It presents the sole reason why liquidated damages are countenanced under section 1671 of the Civil Code, and specific performance is decreed. In further confirmation is found section 3389 of the Civil Code recognizing the universal rule that liquidated damages are proper in such contracts, and, notwithstanding the fact that damages may be thus stipulated, specific performance will be decreed. This declaration was to set at rest a question which somewhat vexed the courts, namely, that as the parties made their damages certain by stipulation, uncertainty, which alone justified the interposition of equity, was removed, and therefore only redress at law remained. (*Whitney v. Stone*, 23 Cal. 275; *Bagley v. Peddie*, 16 N. Y. 469; *Williams v. Dakin*, 22 Wend. 201; *Hahn v. Concordia Society*, 42 Ind. 460; *Chilliner v. Chilliner*, 2 Ves. 528; *McCaull v. Braham*, 16 Fed. Rep. 37; *Diamond Watch Co. v. Roeber*, 106 N. Y. 473.) Thus, so far as this state is concerned, the question is concluded by the code, and a party may either rest satisfied with a recovery of stipulated damages, or, waiving them, may resort to equity for specific performance.

One other point invites brief attention before application is made of these well-settled principles to the contract and facts in the case at bar. In this, as is usual in such contracts, time is expressly declared to be essential. It was always considered essential at law, but it has sometimes been said that equity will not or does not so regard it. This, however, means no more than that, if equitable grounds in excuse of the default are shown, equity to avoid forfeiture will relieve the vendee and uphold a tender made after time. It is the more willing to do this since, the price having been agreed upon, the vendor can usually be compensated for the delay by adding interest. In no other sense is the expression true. Where time is expressly made of the essence of the contract, equity will not ignore the provision, for equity follows the law, and will neither make a new contract for the parties nor violate that which they have freely and advisedly entered into. (*Grey v. Tubbs*, 43 Cal. 359; *Martin v. Morgan*, 87 Cal. 203; *Woodruff v. Semi-Tropic etc. Co.*, 87 Cal. 272; *Vorwerk v. Nolte*, 87 Cal. 236; *Newton v. Hull*, 90 Cal. 487; *Bennett v. Hyde*, 92 Cal. 131.) The equitable rule

where time is not of the essence is succinctly stated in section 1492 of the Civil Code.

Now, in such contracts, upon a breach by the vendor of the covenant to convey, what courses are open to the vendee? Obviously these: he may stand upon the contract and sue at law for damages for the breach. Here his recovery will be governed by section 3306 of the Civil Code; or, still standing upon his contract, he may go into equity, seeking its specific performance; or he may sue at law to recover the amount that may have been agreed upon as stipulated damages; or, finally, treating the vendor's breach as an abandonment, he may himself abandon it, when, the contract having thus come to an end, he may sue at law to recover what he has paid, in an action for money had and received; for, the contract being at an end, the vendor holds money of the vendee to which he has no right, and to repay which, therefore, the law implies his promise.

Upon the other hand, after the vendee's breach of the covenant to pay, what are the vendor's rights? 1. To stand upon the terms of his contract and sue for its breach under section 3307 of the Civil Code; 2. Still resting upon the contract, he may remain inactive, yet retain to his own use the moneys paid by the vendee; so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages; 3. Going into equity, still upon his contract, he may seek specific performance; or, finally, if his generosity prompts him so to do, he may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, the vendee in default would be entitled to a repayment of his money.

One thing more he may do, but this is rather incidental to the fact that he has made the contract than a right growing out of it. It has heretofore been said that in certain cases equity will relieve the vendee from the effect of a breach of his covenant to pay upon a day certain. When such relief is granted, it is only after a showing of fraud, mistake, surprise, or other ground of purely equitable cognizance, excusing the breach. Now, as the vendee in default may maintain such an action, so may the vendor call the defaulting vendee into a court of equity and compel him to show why all his rights under the contract should

not be held to be at an end. The vendor, when he prosecutes such an action, does so to cut off the possibility of any future claim by the vendee to equitable relief, which might embarrass or cloud his title. In some forums this is designated an action for rescission. With us it is commonly called an action to foreclose the vendee's rights. (*Keller v. Lewis*, 53 Cal. 198; *Fairchild v. Mullan*, 90 Cal. 190.)

In the foregoing statement of the rights of the vendor and vendee, it has been said that the vendee, upon the breach of the vendor, is entitled to recover the moneys stipulated as liquidated damages. The foregoing discussion sets forth the reason—the inability of the law to afford adequate compensation in money, and the right consequently accorded to the contracting parties to stipulate what should be the measure and amount of the detriment caused by the default—a reason recognized by sections 3387 and 3389 of the Civil Code.

In the case of the vendor, where the vendee's breach is merely a failure to pay money, under the general principle that damages for a failure to pay money can usually be accurately measured and compensation made by the allowance of interest, courts have inclined to disallow stipulated damages to the vendor, and have limited him to compensatory damages actually proved. But, where the breach of the vendee is of some act not thus readily to be measured, stipulated damages will be allowed the vendor. (*Tinglee v. Cutler*, 7 Conn. 29; *Leggett v. Mutual Life Ins. Co.*, 53 N. Y. 394; *Decamp v. Feay*, 5 Leav. & R. 322; *Remington v. Irwin*, 14 Pa. St. 143; *Grigg v. Landis*, 21 N. J. Eq. 494.)

But while equity will thus, in the cases indicated, refuse to recognize stipulated damages, and will often permit a vendee in default to excuse his breach as to the time of payment, and after excuse made compel the vendor to perform, it does not do so arbitrarily. The vendee must always show equitable grounds for relief before equity will interpose. (Pomeroy on Specific Performance, sec. 335.)

When an equitable showing is not made to excuse the breach, the vendor has the right in equity, as he always has at law, to retain the moneys paid by the vendee. Therefore, we have said that it matters not in such contracts that the parties have de-

·clared that the vendor may retain the moneys paid as stipulated ·damages. The name which the parties thus give does not alter the fact nor change the vendor's rights. If it be said that the ·clause for stipulated damages is void, still the vendor is entitled to retain the money. Thus, in *Hansbrough v. Peck*, 5 Wall. 497, the Supreme Court of the United States, having under consideration this identical question, say: "No rule in respect to the ·contract is better settled than this, that the party who has advanced money or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate ·conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced ·or done."

In precise illustration of the proposition may be quoted the language of the learned Chancellor Walworth in *Egerton v. Peckham*, 11 Paige, 352: "The contract, it is true, contains a ·general provision that if default be made in either of the payments Strobeck shall forfeit all the previous payments and give up the possession of the premises. This, however, is but the legal effect of the contract without such a provision. For, if no ·such provision had been contained in the agreement, the defendant might have brought an action of ejectment to recover the possession of the premises; which ejectment suit this court would not have restrained, except upon the terms of paying the balance of the purchase money and the costs of suit. Nor could the payments already made pursuant to the terms of the contract have been recovered back if the vendee had refused to complete his purchase, even if this clause of forfeiture had not been inserted in the contract. The question here presented, then, is whether this clause was intended by the parties to deprive the purchaser of all legal and equitable right to the premises, or to the previous payments, if for any cause the last payment should not be made at the precise moment when it became due and payable; and, if so, whether it is not the duty of this court to relieve against such a forfeiture."

Professor Pomeroy, in his Equity Jurisprudence, section 455, thus considers the matter: "Where an ordinary contract for the sale of land is so drawn that the vendee's estate, interest, and

right under it are liable to be forfeited and lost upon his failure
to pay the price at the time specified, the question whether
equity will relieve him ought to be a very plain and simple one;
but in the face of the authorities it is impossible to be answered
in any general and certain manner. I shall, therefore, simply
state the general conclusion derived from the decided cases. It
is well settled that where the parties have so stipulated as to
make the time of payment of the essence of the contract, within
the view of equity as well as of the law, a court of equity cannot
relieve a vendee who has made default. With respect to this
rule there is no doubt. The only difficulty is in determining
when time has thus been made essential. It is also equally
certain that when the contract is made to depend upon a condi-
tion precedent, in other words, when no right shall vest until
certain acts have been done, as for example, until the vendee
has paid certain sums at certain specified times, then also a court
of equity will not relieve the vendee against the forfeiture in-
curred by a breach of such condition precedent." .

It has been said that after the vendee's breach the vendor may
agree to a mutual abandonment and rescission, in which last
instance, and in which alone, the vendee in default would be
entitled to a repayment of his money. Such was the precise
condition of affairs pleaded and not denied in *Drew v. Pedlar,
supra,* where it is said: "Both the complaint and answer admit-
ted that the agreement had been rescinded and annulled by the
parties, and, as the judgment on the pleadings partly rests upon
this fact, it is conclusive evidence of the fact." And again:
"From the time the defendants elected to rescind the contract,
or to consider and treat it as rescinded, it was their duty to re-
fund the money they had received under the contract, and no
demand before suit was necessary." Such, indeed, is the law,
and if *Drew v. Pedlar, supra,* be confined to cases in the condi-
tion thus represented, that is to say, to cases where the vendor
has rescinded after vendee's breach, then no misunderstanding
need arise and no confusion will result. What is there said as
to the covenant for liquidated damages being void is, as we have
seen, of no consequence in contracts such as that and the one at
bar, where the liquidated damages are expressed as the moneys
paid by the vendee, for in all such cases, as has been shown, the

vendor is entitled to retain these moneys, whether designated liquidated damages or not. *Phelps v. Brown*, 95 Cal. 572, affords a typical instance of such rescission by the vendor. There the vendee was in default, but the vendor elected to rescind, and, notwithstanding the default, refunded to the real estate agent the moneys that had been paid by the vendee under the contract. The action was against the real estate agent, and it was decided, and indeed over the decision there could be no question, that in such a case the vendee is entitled to recover his money.

But, while it is essentially true that in case of a rescission the vendee may demand that he be restored to his original condition, it does not follow that a vendor who refuses to convey after such breach by the vendee thereby rescinds. To the contrary, in refusing to convey after the vendee's default he is not treating the contract as at an end, but is expressly standing upon it, and basing his rights upon its terms, covenants and conditions. The misleading feature in *Drew v. Pedlar, supra*, comes from the lengthy statement of facts, from which it appears that all the plaintiff vendee did was to make tender long after his default, which tender the vendor refused to accept. But the vendee likewise pleaded a mutual abandonment and rescission, and, as appears from the opinion, the pleading as to these matters was not denied.

It would be to the last degree unjust and inequitable to allow a vendee, after his default under such a contract, to put the vendor in default by a mere tender. The practical effect of such a rule would be that a vendee without risk could speculate indefinitely in the land of the unfortunate vendor. The vendee would enter into a contract in which time would be declared of the essence, and stipulate under condition precedent, as in this case, to make payment at a certain time. Failing to make payment he would three months, six months, one year, or as in this case over three years, after the date of the failure, make an offer to perform, and if the land had risen in value, according to the theory of respondents here, could compel performance; but in every case he could recover the moneys paid.

Lord Loughborough, in *Lloyd v. Collett*, 4 Bro. C. C. 469, well says: 'There is nothing of more importance than that the ordi-

nary contracts between man and man, which are so necessary in their intercourse with each other, should be certain and fixed, and that it should certainly be known when a man is bound and when he is not. There is a difficulty to comprehend how the essentials of a contract should be different in equity and at law. It is one thing to say that time is so essential that in no case in which the day has been by any means suffered to lapse the court would relieve against it and decree performance. The conduct of the parties, inevitable accident, et cetera, might induce the court to relieve; but it is a different thing to say that the appointment of a day is to have no effect at all, and that it is not in the power of the parties to contract that if the agreement is not executed at a particular time they shall be able to rescind it. . . . . I want a case to prove that where nothing has been done by the parties this court will hold in a contract of buying and selling a rule that the time is not an essential part of the contract. Here no step had been taken from the day of the sale for six months after the expiration of the time at which the contract was to be completed. If a given default will not do, what length of time will do? An equity arising out of one's own neglect! It is a singular head of equity."

In *Bradford v. Parkhurst*, 96 Cal. 102, this court, having under consideration *Drew v. Pedlar, supra,* said: "That case does not go to the extent of holding that a vendee can elect to consider the contract at an end and recover what he has paid when the vendor has not abandoned the contract."

In *Merrill v. Merrill*, 103 Cal. 287, *Drew v. Pedlar, supra,* was again under review, and it is said: "Nor do I think it was held in any of the cases cited that a rescission was effected simply by the act of a vendor in claiming a forfeiture. In some of the cases the contract provided that the vendor might recind upon default of the vendee. In such cases the rescission is by consent of the parties. In others it seems to be held that when the vendor refuses further performance, and claims the damages according to the contract, he abandons the contract, and thereupon the vendee may also abandon it and reclaim his money. Whether the conclusion be correct or not is not a question here. Unless the rescission is by consent, it is difficult to understand how it has been brought about. For, as respon-

dent justly says, it is, in effect, enacted in section 1691 of the Civil Code that rescission cannot be otherwise effected without a compliance with that section. The idea must be that the abandonment of the contract by the vendor is equivalent to a claim of rescission on his part which may be acquiesced in by the vendee.

"In *Cleary v. Folger,* 84 Cal. 316, 18 Am. St. Rep. 187, it was simply held that the vendor was also in default, in that he did not tender a deed on the very day it was due on the contract. Both being in default, either could treat the contract as rescinded. It was not there held that when a vendor refuses to complete performance because of a breach on the part of the vendee, and claims damages as stipulated in the contract, he thereby rescinds or consents to a rescission.

"It has been said in several cases that this doctrine was announced in *Drew v. Pedlar, supra.* Perhaps it does so hold, but such conclusion seems to be based in that case partly upon the pleadings in which both parties recognize the fact of a rescission. In other words, it was a rescission by mutual consent."

In the case at bar, the payment of the final amount under the contract, at the time and in the manner agreed upon, was a condition precedent to the right of the vendee to demand a conveyance. Upon his failure to make payment the vendee committed a breach, and no affirmative act upon the part of the vendor was necessary to bring about this result. Months after, and without any equitable showing to relieve the default, the vendee makes tender, and because of its refusal claims the right of recovery. But the vendor, in refusing to accept the tender and to repay the money, is neither violating his contract nor rescinding it, nor treating it as at an end. He is standing squarely upon its terms. The vendee is within the rule declared by Pomeroy, and above quoted. The contract is made to depend upon a condition precedent. By its terms no right is to vest in the vendee until certain acts of payment have been done by him, and a court of equity no more than a court of law will relieve a vendee under such circumstances from the penalties arising from the breach of such condition, in the absence of an equitable showing to excuse his default. None is here even attempted to be made.

It follows that the judgment and order should be reversed and the cause remanded, and it is ordered accordingly.

McFarland, J., and Temple, J., concurred.

HARRISON, J., concurring—I concur in reversing the judgment and order appealed from upon the following grounds: The plaintiff and the defendant entered into a written agreement, February 21, 1891, whereby the defendant agreed that "in consideration of, subject to, and upon the full and due performance of the covenants and agreements on the part of the party of the second part hereinbefore contained," it would convey to the plaintiff a certain tract of land; and whereby the plaintiff in consideration of said agreement agreed to pay to the defendant the sum of six hundred and twenty-five dollars, as follows: one hundred and twenty-five dollars upon the execution and delivery of the agreement, one hundred and twenty-five dollars on or before the twenty-first day of February, 1892, and one hundred and twenty-five dollars on or before the twenty-first day of each succeeding February, the last of said payments to be made on or before the twenty-first day of February, 1895, with interest at the rate of six per cent, payable annually on the twenty-first day of February of each year on each and all deferred payments. The agreement also contained the following provisions: "It is expressly understood and agreed between the parties hereto that in all matters and things hereunder to be done, and all payments hereunder to be made, time is and shall be of the very essence of this agreement.

"The due performance of all covenants and agreements on the part of the party of the second part is a condition precedent, whereon depends the performance of the agreements on the part of the party of the first part. In the event of a failure of the party of the second part to comply with the covenants and agreements, or any thereof, on his part entered into, the party of the first part shall be released from all obligations in law or in equity to transfer and convey said properties, or any thereof, and the said party of the second part shall forfeit all rights under this agreement, and all rights to any and all moneys which he shall theretofore have paid hereunder, as liquidated damages for such default, and not as a penalty."

Other provisions not necessary to be considered herein are also found in the agreement. At the execution of the instrument the plaintiff paid to the defendant the sum of one hundred and twenty-five dollars therein provided for, and on February 21, 1892, paid the further sum of one hundred and twenty-five dollars together with seven dollars and fifty cents for interest. No other installment of the purchase price of the land, or interest thereon, was paid. The plaintiff did not enter into possession of the land. August 9, 1895, the plaintiff tendered to the defendant the full amount then unpaid upon the said agreement, and demanded a conveyance of the land, tendering at the same time a deed for execution proper in form. The defendant refused to make the deed, and thereupon the plaintiff brought the present action to recover the money which he had paid to the defendant under the provisions of the contract. Judgment was rendered in favor of the plaintiff as prayed for in his complaint, from which the defendant has appealed.

Under the agreement between the plaintiff and the defendant, neither could maintain an action thereon against the other without having performed all of the conditions previously to be performed by him. The plaintiff could not maintain an action for a conveyance of the land until he had paid or tendered the money which he was to pay therefor. By the terms of the agreement he agreed to pay certain installments of the purchase price at designated times, and, although the defendant could have brought an action for each of these installments except the last, at its maturity, without tendering a conveyance, yet, if it failed to bring such action until the maturity of the last installment, it could not maintain an action therefor without a previous tender of the conveyance. (*McCroskey v. Ladd,* 96 Cal. 455.) Each of the parties to the contract had the right to compel the other to comply with its terms, and any action of this nature would be an action upon the contract, and to enforce it according to its terms. A contract for the purchase and sale of real estate does not differ from any other contract so far as the rights of the parties under its terms are affected. Parties have the right to make their contracts in such form and with such terms as they desire, and it is the function of courts to construe and enforce them as they have been made by the parties. Each has the right

to an enforcement of the obligations of the other, and neither can free himself from his obligation against the will of the other, so long as the contract remains in force. Whether the action be to enforce the contract, or to recover damages for its breach, it is incumbent upon the plaintiff in such action to show a performance on his part of all the acts required to be performed by him, before he can call upon the other to comply with his part of the agreement, or to respond in damages for a failure so to do. (*Easton v. Montgomery*, 90 Cal. 307.)

There have been many cases before this court involving the rights of parties to agreements for the sale and purchase of real estate, in which it has been held that after the parties have rescinded the agreement, or mutually agreed to abandon it, the vendee may recover the money which he had paid in part performance of his contract (*Drew v. Pedlar*, 87 Cal. 443; 22 Am. St. Rep. 257; *Phelps v. Brown*, 95 Cal. 572; *Shively v. Semi-Tropic etc. Co.*, 99 Cal. 259); but it has never been held that while the contract was insisted upon by the vendor, and he had done no act by which it might be contended that he had abandoned the contract, or was in any respect in default, the vendee could recover the money paid by him in part performance of his contract. On the contrary, it has been held that the vendee, who was himself in default in the payment of a portion of the money, could not against the will of the vendor repudiate the contract and recover the portion already paid. (*Bradford v. Parkhurst*, 96 Cal. 102; *Joyce v. Shafer*, 97 Cal. 335; *Garberino v. Roberts*, 109 Cal. 125.)

In the present case, the parties have made their agreement in clear and definite terms. The plaintiff agreed with the defendant that he would pay to it certain sums of money at certain times, and the agreement of the defendant is equally explicit and clear that in consideration of the full and due performance of the agreements on the part of the plaintiff it would execute to him a conveyance of the land. That there might be no misunderstanding of these respective obligations, they further declared that it was expressly understood and agreed between them that in all matters and things to be done, and all payments to be made by virtue of the contract, "time shall be of the very essence of this agreement"; and, further, that the due

performance of all covenants and agreements on the part of the plaintiff was a condition precedent to the obligation of the defendant to perform its agreement. The plaintiff does not claim that he performed his covenants and agreements according to the terms of the contract, but by express allegation shows that he did not do so, nor does he offer any excuse for their non-performance. Neither does he allege or contend that the defendant has violated any of the obligations assumed by it under the contract. By the terms of the agreement the defendant was not required to make the conveyance except upon the full payment of the purchase price by the 21st of February, 1895, and it is not alleged in the complaint that such purchase price was then paid, or that it was tendered until many months thereafter. The plaintiff could not maintain an action against the defendant to recover the money paid by him, unless there had been a breach of the contract by the defendant, and, the defendant was not guilty of a breach of its obligation by failing to execute the conveyance, when the plaintiff was himself in default, or by refusing to comply with the demand of the plaintiff made many months after he had lost his right to the enforcement of the contract. Section 1490 of the Civil Code provides: "Where an obligation fixes a time for its performance, an offer of performance must be made at that time, within reasonable hours, and not before nor afterward." The time for the performance of the obligation by the plaintiff was fixed by the contract, and under the provisions of this section he was required to perform his contract at that time, and not before or afterward. As the contract also declared that time was of the essence of the obligation, the provisions of section 1492 of the Civil Code are inapplicable, and the offer of performance subsequent to the time fixed by the contract was unavailing.

The provision that in case of default by the plaintiff to comply with his agreement he should forfeit his right to whatever moneys he might theretofore have paid, and that the defendant should be released from all obligation to convey the property, was but a declaration in express terms of what would have been the legal rights of the parties without such provision. The plaintiff had agreed to pay the money to the defendant as a condition precedent to his right to demand a conveyance of the

land, and as the consideration for the defendant's agreement to make the conveyance, and he could not by his mere default become entitled to repossess himself of the money which he had paid under this express agreement. Whether the money thus paid was styled by the parties as penalty, or forfeiture, or liquidated damages, is immaterial. This provision was not an executory agreement for "damage to be paid or compensation to be made for the breach of an obligation," for which provision is made in section 1670 of the Civil Code, but the money therein referred to was money that had been paid by the plaintiff in discharge of an obligation which he had assumed, and the right of the defendant to receive and retain it was not impaired by the term in which it was styled in the agreement.

Garoutte, J., and Van Fleet, J. concurred.

Rehearing denied.