[Civ. No. 3991. First Appellate District, Division One.—November 27, 1922.]

## CHARLES ZAUTZ et al., Respondents, v. F. W. SEBREAN et al., Appellants.

[1] LANDLORD AND TENANT—DEFAULT BY LESSEES—RE-ENTRY BY LESSORS—RESCISSION.—A lease of real property giving the lessors the right of re-entry in the event of default in the payment of rent is not rescinded by the lessors by their acceptance of the keys and their taking possession of the leased premises upon the default of the lessees, where such acts are done at the request of the lessees, and in accordance with the terms of the lease, and the lessors are not in default at the time, but on the contrary are ready and willing to perform their contract.

APPEAL from a judgment of the Superior Court of Alameda County. T. W. Harris, Judge. Reversed.

The facts are stated in the opinion of the court.

Victor A. Dunn, Lewis A. Hilborn and D. Cameron for Appellants.

Jesse Robinson and Clarence De Lancey for Respondents.

TYLER, P. J.—This action is one in assumpsit and was brought to recover money paid under the terms of a lease and also for the value of certain goods sold and delivered. Plaintiffs obtained judgment in the sum of $2,083, and defendants appeal.

The facts may be briefly summarized as follows:

Defendants were the owners of certain real property situated in San Leandro, county of Alameda. The premises

were improved with a brick building known as the Cherry City Garage. On October 15, 1920, and prior thereto, one Leslie Galbraith was in possession thereof under a lease covering a period of some five years. He was in arrears in rent and wished to dispose of his lease and business. Plaintiffs being informed of this fact, communicated with the defendants and expressed their desire to purchase the business and lease the premises. They did not care to deal directly with Galbraith as they were of the opinion that defendants could acquire the business upon better terms than they. Accordingly they agreed that defendant F. W. Sebrean should conduct the negotiations and purchase the garage for them. This arrangement was carried out. Sebrean acquired the lease for the sum of $1,750. He also, and at the same time, and for the benefit of plaintiffs, purchased from Galbraith automobile accessories to the amount of $633.32. In addition to being in arrears in rent Galbraith was indebted to various people in different sums, and the entire amount of the purchase price he received from the sale of his lease and business was distributed among his creditors.

[1] Upon acquiring the property in the manner thus indicated defendants as lessors and plaintiffs as lessees entered into a contract of lease of the same for a term of five years at a monthly rental of $350 per month, payable monthly in advance. Under its terms the parties agreed that the lessees would be credited with the sum of $1,750 they had paid Galbraith for his lease, said sum to be applied on the last five months of the term. One month after entering into this contract, and when in default in payment of the second month's rent one of the plaintiffs Charles Zautz served defendants with a notice of rescission of the lease and sale, claiming that he and his associate had been defrauded. At the same time he delivered the keys of the leased premises to them with the suggestion that they take possession of the premises in accordance with the provisions of the lease entitling them so to do in the event of non-payment of rent on the part of plaintiffs, one of the covenants of the lease between the parties providing that if any rent should be due and unpaid or default should be made in any of the provisions thereof that the lessors would have the right to re-enter the premises and remove all persons therefrom. Demand was also made at this time upon de-

fendants for a restitution to plaintiffs of the sum of $2,383, the amount paid by them for the lease and automobile accessories.

Defendants accepted the keys but refused to make reimbursement of the sum demanded. The following day defendants took possession of the abandoned premises as requested, made an inventory of the property belonging to plaintiffs and notified them to remove the same. Thereafter defendants proceeded to conduct the same business as was carried on by plaintiffs. A small quantity of gasoline remained in the tank which defendants were unable to store. They had the tank refilled without removing this gasoline, but offered to return an equal quantity in kind to plaintiffs. Prior to the notification given plaintiffs to remove their accessories, defendants had been tendered a bill of sale for the same, together with a demand for the sum of $633.32, the amount paid by plaintiffs for such accessories. Compliance with this demand was also refused. This action was thereupon brought by plaintiffs.

It was contended below, and is here, that the facts above narrated constituted a rescission of the agreement between the parties. The trial court so concluded, and judgment went in plaintiffs' favor for the sum of $2,083, the full amount prayed for, less one month's rent which the court found to be due defendants under the lease, and defendants appeal. It is appellants' claim that entry by them under the circumstances related did not constitute an abandonment of their rights under the terms of the lease, and did not, so far as they were concerned, amount to a rescission of their agreement. We see no escape from this contention. The acts amounted to no more than a surrender on the part of plaintiffs of the leased premises, and a determination by them to terminate the lease. This surrender and abandonment was without any fault on the part of defendants. True, fraud was claimed by plaintiffs when they demanded restitution of the money they had paid Galbraith, but at the trial all question of fraud was expressly abandoned, and they relied solely for a recovery upon the acts of defendants in accepting the keys and conducting the business which acts, they claim, constitute a rescission of the contract. We fail to see in what possible manner such acts can be so construed. Under the circumstances defendants had the right to enter the premises, care for them and terminate

the lease. They might have elected to accept possession for the purpose of reletting the same for the benefit of plaintiffs, but they were not bound to do so. (*Baker* v. *Eilers Music Co.*, 26 Cal. App. 371 [146 Pac. 1056].) The only presumption, if any, that could possibly arise from the acceptance of the premises upon plaintiffs' surrender, would be an agreement to absolve them from the further payment of rent under the lease. But defendants are not here seeking to recover any rent, but on the contrary have elected to accept a surrender. They at all times positively refused to rescind their agreement or to make any reimbursement of any character to plaintiffs. They do stand ready, however, as is their duty, to deliver up the automobile accessories. So far as the lease is concerned as above pointed out, defendants were expressly given the right of re-entry when any rent became due and unpaid. Their mere act, therefore, of accepting the keys and taking possession did not constitute a rescission on their part, but rather an assertion by them of a right given under the lease, and one which the lessees themselves acknowledged when they requested that defendants take possession. (*Glock* v. *Howard etc. C. Co.*, 123 Cal. 1, 16 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713] ; *Phillips* v. *Stark,* 186 Cal. 369 [199 Pac. 509, 511] ; 13 Corpus Juris, 600; Jones on Landlord and Tenant, sec. 548.) The evidence conclusively shows that appellants were in no manner ever in default, but on the contrary it does show that they were at all times ready and willing to perform their contract. Respondents, on the other hand, without cause renounced and surrendered up their lease and failed to comply with any of its terms. Such an arbitrary renunciation on their part can in no manner affect the rights of defendants, who at all times insisted upon a compliance with the terms of the contract. The acts of plaintiffs amounted to no more than an offer of rescission, never consummated or consented to by defendants.

The conclusion we have reached renders it unnecessary to discuss the liability of defendants for the sums paid by plaintiffs to Galbraith or any question of agency or the respective rights of the parties flowing therefrom.

For the reasons given the judgment is reversed.

Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 26, 1923.

All the Justices concurred, except Seawell, J., who was absent.