[Civ. No. 3968.   Second Appellate District, Division One.—December 4, 1922.]

## LOS ANGELES INVESTMENT COMPANY (a Corporation), Appellant, v. JENNIE B. WILSON et al., Respondents.

[1] VENDOR AND VENDEE—PREMATURE NOTICE OF DEFAULT—PENDENCY OF ACTION—SUBSEQUENT DEFAULT—RIGHT OF POSSESSION.—Where the contract for the purchase of real property provides that the vendee, in the event of default by her, "agrees to and hereby does relinquish all rights and interests created or conferred by or under this indenture and in all sums paid on said lease and the property" and that time is of the essence of the agreement, neither the giving by the vendor of a *premature notice of default* in the making of the installment payments nor the pendency of an action brought under that notice constitutes a valid excuse whereby the vendee is entitled to retain possession of the property after the expiration of the period to which she is paid up without paying anything more on the contract until after final determination of that litigation.

[2] ID.—QUIETING TITLE—POSSESSION—TIME—EVIDENCE—FINDING.—In an action by the vendor to quiet title to the property, following the default by the vendee in the payment of the installments due under the contract, a finding by the trial court that plaintiff at some time prior to a given date physically took possession of the premises is not justified where the evidence shows that such act occurred subsequent to such time, and was an act whereby the vendor obtained peaceable and quiet possession of the property, in the absence of the vendee, who for nearly a year had been in default, and who therefore had lost her right of possession.

[3] ID.—ERRONEOUS JUDGMENT—CONSTRUCTIVE OUSTER—APPEAL—REVERSAL—RESTORATION OF RIGHTS.—Notwithstanding the notice of default by the vendor was premature and the judgment of the trial court in the action based upon such notice was erroneous, and was subsequently reversed on appeal, the entry of such erroneous judgment did not operate as a constructive ouster of the vendee, there having been no actual ouster; and the subsequent reversal of that judgment on appeal did not serve to restore the vendee to her right of possession as of the date when the judgment was entered, where prior to that date the vendee was in default under her contract and had thereby lost any right of possession.

[4] ID.—DEFAULT—PEACEABLE POSSESSION—NOTICE.—Where in a contract for the purchase of real property the vendee, in the event of default by her, "agrees to and hereby does relinquish all rights and interests created or conferred by or under this indenture and in all sums paid on said lease and the property," and time is made of the essence of the agreement, if the vendee is in default and the vendor obtains peaceable possession, the latter may hold possession, lawfully, without any affirmative action or the giving of any notice of default to the vendee.

[5] ID.—PAYMENT OF AMOUNT DEMANDED—RIGHT OF POSSESSION— SALE TO THIRD PARTY.—If, pursuant to the vendor's voluntary offer to permit the vendee to pay the amount due, the vendee had made such payment, she would have been entitled to possession of the premises; and the fact that at the time the vendor served the vendee with notice of the amount due and demanded payment on or before a given date, the vendor had contracted to sell the same to a third person, and the latter had been placed in possession, was not sufficient to show that the vendor would have been unable to restore possession to the first vendee if the latter had made payment of the sum demanded.

[6] ID.—CONVEYANCE TO THIRD PARTY—RIGHTS OF VENDEE.—In the absence of pleading or proof that the rights of the vendee have not been reserved by the vendor in making a sale or conveyance to a third party, the fact that such contract or deed had been made is not presumed to be adverse or injurious to a vendee whose right to a deed had not yet matured when the third party transaction occurred.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

Flint & MacKay and William A. Bowen, for Appellant.

Ford & Bodkin and H. L. Watt for Respondents.

CONREY, P. J.—This is an action to quiet the title of plaintiff in and to certain real property against adverse claims of the defendants. In addition to their answer, the defendants filed a cross-complaint, seeking to enforce the rights of defendant Jennie B. Wilson as purchaser of the same property from the plaintiff under a contract entered into on or about the twenty-second day of March, 1913.

On the third day of April, 1916, the plaintiff, claiming that Mrs. Wilson was in default by reason of nonpayment

of installments due under the agreement, served upon her notice that it exercised its option to declare the agreement terminated and all her rights to the property forfeited, and demanded that she forthwith deliver possession of the property to said Investment Company. The defendants having continued in possession, notwithstanding said notice and demand, the company, on the eighteenth day of May, 1916, commenced an action to terminate the agreement. In that action the superior court entered judgment canceling the agreement and quieting plaintiff's title to the premises. On appeal to the supreme court that judgment was reversed. For a further statement of the facts showing the terms of the agreement, as well as the court's construction thereof, we refer to the decision on appeal in said former action. (*Los Angeles Investment Co.* v. *Wilson,* 181 Cal. 616 [185 Pac. 853].)

The first controversy grew out of the fact that although the contract provided for payment of a stated sum in monthly installments of $36, there was an initial payment of $300. The purchaser paid the monthly payments of $36 for about three years, during which time no contention was made that the initial payment was included in that part of the purchase price payable in monthly installments. Then, when the vendee did not make certain monthly installment payments and the vendor gave notice and commenced action as above stated, the defendants claimed that said initial payment was a payment entitled to credit on the obligation to pay at the rate of $36 per month, and that, therefore, they were not in default. The supreme court, having decided this question in favor of the defendants, held that the finding that Mrs. Wilson was in default at the commencement of that action was without support, and that the action was prematurely commenced. It was upon that ground alone that the judgment was reversed. The judgment of reversal was filed on December 1, 1919.

The present action, commenced by complaint filed on the third day of June, 1920, is an action to quiet title. In addition to their answer, the defendants filed a cross-complaint seeking to have it declared that they are the owners of an equity in the described real property pursuant to the terms of said contract; demanding that an accounting be made of certain rentals received by the plaintiff, and generally for

relief in equity under the facts alleged. To this cross-complaint an answer was filed, raising material issues of fact. The parties are agreed concerning the amount of money actually paid by the vendee under said contract, and that the last of such payments was the sum of $30 paid on February 5, 1916. It is undisputed that, in accordance with the contract as interpreted by the supreme court, the payments made by the vendee were sufficient to pay the agreed sum of $36 per month to and including the month of August, 1916, together with a balance of $6 to be credited on the September installment. The former action was tried on the nineteenth day of January, 1917. By the court's findings, filed on the thirtieth day of that month, it was determined that possession should be restored to the plaintiff and the agreement be canceled unless, within thirty days from the entry of judgment therein, the defendants pay to the plaintiff a stated sum. No further payment having been made, the judgment in that action was entered on the eighth day of March, 1917. In the case at bar the superior court has construed the former judgment of the superior court as a judgment of eviction against the defendants, which, in view of the reversal, should now be treated as an unlawful eviction. On that theory the court has taken testimony concerning the rental value of the premises from March 8, 1917, to December 7, 1920 (date of the trial of this action), and has found the reasonable rental value of the premises during that period to be the total sum of $2,142, and has credited that amount on the contract. The vendee therefore is required, as a condition of restoration to all her rights under the contract, to pay only the balance remaining due after allowance of that credit.

The evidence shows that, prior to the commencement of this action, plaintiff never made any attempt to eject the defendants from the premises other than by notice and by prosecuting the former action, as before stated, and except that the plaintiff entered into possession under the circumstances hereinafter stated. Without having paid the installment of September, 1916, or any subsequent installment, defendants remained in possession and actual occupancy until January 13, 1917, which was six days before the trial of the former action. On that day the defendants removed their furniture from the dwelling-house on said premises and

ceased to reside there, but kept the key of the house. From that time until September 10, 1917, it is stipulated that no one was living in the premises and that the defendants had no personal property thereon. The manager of plaintiff's collection department testified (and his statement was not contradicted) that a day or two after the trial of the former action he visited the premises in question and found both the front and back doors standing open, but that neither locks nor doors were broken in any way. There is no evidence that the defendants were present there again except that in March, 1917, Mrs. Wilson took some plants out of the yard, at which time she says that the house was vacant and locked. In August, 1917, the assistant manager of the plaintiff visited and examined the premises. Thereupon the plaintiff took physical possession of the property, made some repairs, and on September 10th executed a contract of sale to one Bachman, on which he had made sundry payments to the plaintiff and continues in actual possession of the premises.

On May 11, 1920, the plaintiff gave notice to the defendants "That Jennie B. Wilson is now, and ever since the 1st day of September, 1916, has been in default in the payment of the monthly installment due on said 1st day of September, 1916, under that certain lease agreement with privilege of purchase, made and executed on or about the 22nd day of March, 1913," between the plaintiff and Mrs. Wilson (with further identification of the contract and further specification of amounts of installments unpaid). The defendants were thereby further notified that the company "hereby demands from you and each of you payment of all of the said installments due under said contract, as hereinabove stated, to and including the installment of thirty-six ($36.00) dollars due under said agreement on the 1st day of May, 1920, amounting to the sum of one thousand six hundred fourteen ($1,614.00) dollars, on or before the 22nd day of May, 1920; and that thereafter and commencing with the service on you of this notice the said Los Angeles Investment Company, a corporation, will insist on your strict compliance with the terms and requirements of said agreement as to the payment of the said monthly installments as called for in said contract at the times therein stated," and that in case of failure of defendants to comply with said requirements, the com-

pany "will exercise the right and privilege in said agreement to treat any default in the payment of the monthly installments therein called for as a forfeiture of all your right, title and interest in and to the said contract and the real property therein described, and that the said Los Angeles Investment Company will exercise all authority, rights and privileges given to it under the terms of said agreement in case of a breach of the conditions of the said contract on the part of the said Jennie B. Wilson, the second party thereto. You are hereby further notified, that the total amount due at this date under said contract from you, to-wit, the sum of one thousand six hundred fourteen ($1,614.00) dollars, must be paid on or before said 22nd day of May, 1920, or you and each of you will forfeit all of your right, title and interest in and to the said agreement and the real property therein described, and that the said agreement shall thereby and upon such failure to make such payment be terminated in accordance with the terms and conditions thereof." The defendants having made no further payment, this action was commenced on the third day of June, 1920, and resulted in the judgment from which the plaintiff now appeals.

[1] According to the terms of the contract the vendee made default thereon when she failed to pay the unpaid part of the $36 due September 1, 1916, and was further in default by failure to make the payments thereafter falling due, unless it can be maintained that such nonpayment was excused by some act of the vendor. The real question in this case is not one concerning nonpayment. It rather is a question concerning excuse for nonpayment. Down to September 1, 1916, the vendee was in rightful possession of the property. From that time until August, 1917, she was in actual possession, in the manner above stated, and this possession had not been disturbed by re-entry of the vendor. It was provided in the contract that upon failure to make any of the payments then the vendee "agrees to and hereby does relinquish all rights and interests created or conferred by or under this indenture and in all sums paid on said lease and the property above described"; and that time is of the essence of the agreement.

During the period last mentioned the vendee was in default, unless the premature notice of default and the pendency of the action brought under that notice constituted a

valid excuse whereby the vendee was entitled to retain possession of the property without paying anything more on the contract until after final determination of that litigation. But we think that the assertion of such an excuse and of such rights on the part of a vendee under such a contract is wholly contrary to equity.

In *Empire Investment Co.* v. *Mort*, 171 Cal. 336 [153 Pac. 236], the plaintiff brought ejectment against the defendant, who was holding possession while claiming under a contract of purchase of land from the plaintiff. The defendant having failed to pay an installment of money due under the contract, the plaintiff made demand therefor, and in such demand claimed an amount of interest which the defendant contended was excessive. Defendant called attention to the excess, but did not offer to pay the balance at that time. The plaintiff elected to terminate the contract and demanded possession of the property. Discussing these facts, and the effect thereof, the court said: "The notice by plaintiff that it elected to terminate the agreement and to retake the property could have no force if defendants were not in default. The position assumed by the vendor was not like that of a party to an agreement who declines to perform some condition precedent to payment of the purchase price. In such case the vendees would be excused from acting until the vendor was ready to perform. But in the transaction between the Empire Investment Company and the defendants, the former had performed its part of the agreement when possession of the property had been given to Messrs. Mort and Wagy." Referring to former appeals in another action between the same parties, relating to the same contract (*Empire Investment Co.* v. *Mort*, 169 Cal. 732 [147 Pac. 960]), the court further said: "As we said in the decision of the appeals in the other case: 'Defendants may not hold the premises and withhold the purchase price. Undoubtedly that is the rule. (*Gervaise* v. *Brookins*, 156 Cal. 104 [103 Pac. 329]; *Champion Gold Mining Co.* v. *Champion Mines*, 164 Cal. 205 [128 Pac. 315].) . . . The contract provided for money payments at specified times. There were no precedent duties to be performed by plaintiff before defendants upon the dates indicated in the agreement should be bound to make payments.' The plaintiff's notice of forfeiture and demand for the restitution of the property were

not (as was said in the opinion in *Oursler* v. *Thacher,* 152 Cal. 745 [93 Pac. 1007]), 'a repudiation or abandonment of the contract or a consent to a rescission thereof, any more than was the refusal of the vendor to convey in *Glock* v. *Howard & W. Colony Co.,* 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], an abandonment or a consent to a rescission.' "

In *Newell* v. *E. B. & A. L. Stone Co.,* 181 Cal. 385 [9 A. L. R. 993, 184 Pac. 659], the vendor having accepted payments after the times specified in the agreement, and having thereby waived the provision with reference to time being of the essence of the contract as to those payments, it was held that the vendor could not thereafter effectually declare a forfeiture of vendee's right to purchase and of the payments already made without notice that in the future a strict performance would be required. After having received such payments, the vendor tendered a deed conditioned upon payment of the balance of the purchase price, provided the entire balance should be paid immediately upon receipt of the notice, and the notice further declared that unless such payment be made immediately the vendee should forfeit all of his rights under the contract. Discussing the effect of this notice, the court said: "The mere fact that the vendor may have been in error in supposing and declaring that unless *immediate* payment were made of the entire balance of the purchase price it could consider the rights of the vendee foreclosed does not convert the notice into a declaration that the vendor elected to rescind. On the contrary, defendant sought to stand upon the contract and to enforce its terms. . . . Plaintiff was in default when the notice was received by him. True, his prior defaults had been condoned, and he could have reinstated himself by making prompt payments of the balance due under the terms of the contract, but he could not, by merely saying nothing, gain the right to demand repayment of the installments of the purchase price previously made. He could not place defendant in default unless he at least tendered to defendant all that was due under the agreement up to the date of his offer."

In view of the decisions above noted, the only consistent conclusion in this case is that, although the Investment Company was in error when it claimed that the defendant was

in default prior to September, 1916, and gave notice of default based upon this erroneous theory, and although the plaintiff was not entitled to maintain its former action, it did not thereby lose its right to prompt payment of the September and following installments as they became due. By the very terms of the contract, the vendee lost her right to possession of the property prior to the time of the trial and judgment in the superior court in the former action. Neither the prosecution of that action nor the notice of default precedent thereto had interfered with defendants' possession of the premises when the actual default occurred.

[2] The finding of the court in this case that the plaintiff at "some time prior to August, 1917," physically took possession of the premises, is not sustained by the evidence. That act did occur in August, 1917, and was an act whereby the vendor obtained peaceable and quiet possession of the property, in the absence of the vendee, who for nearly a year had been in default, and who therefore had lost her right of possession.

[3] But respondents say, that the entry of judgment on March 8, 1917, in the former action, operated as a constructive ouster of the vendee; and it is argued that since that judgment was reversed, the vendee must be deemed to be restored to her right of possession as of the date when the judgment was entered. Assuming that the vendee had lost possession by reason of that judgment alone, and that no other default had intervened, we may concede that this argument would prevail. But we must also take into consideration the fact that the vendee did not make tender of any of the numerous payments which fell due after August, 1916, and thereby lost her right of possession before any judgment was rendered against her. Respondents claim that the vendee was excused from making any such tender because, they assert, appellant would not have accepted the money if it had been offered. On this point the court made the following finding: "The court further finds that from April 3rd, 1916, to March 8, 1917, the date of the judgment of the Superior Court, the plaintiff was standing on its notice of forfeiture of defendants' interest (dated April 3rd, 1916), and would not have recognized defendants' rights under said agreement, or have restored the defendants to their rights under said agreement, except on payment by the defend-

ants of the entire amount claimed by the plaintiff, and for which it had obtained judgment as aforesaid.'' In other words, the only controversy was over the amount due. Relating to this finding, the only evidence brought to our attention, in addition to the notice and the pendency of the former action, is in the testimony of the witness Owens, who was an escrow officer of appellant, and Mr. Herbert, assistant general manager of the company. Mr. Owens testified that Mr. Herbert had stated that the contract was forfeited ''by reason of the act committed prior to the filing of the first complaint''; that he never heard Mr. Herbert discuss anything that occurred after the filing of the complaint which changed his opinion; that he presumed that the company continued to consider the contract forfeited by reason of the judgment until that judgment was reversed by the supreme court. Mr. Herbert testified, referring to the notice given May 11, 1920, ''On behalf of the company I would have accepted the $30 due on September 1, 1916, under the ruling of the supreme court, not as full payment but I would have taken this and asked for more. I was only generally familiar with the answer filed by the Wilsons in the first case. I know they had claimed payment up to September, 1916. I do not remember their stating in their answer that they were willing to pay. I know nobody offered us any money. I would have accepted the $30 September 1st, as full payment. Had they offered $36 as full payment on October 1st, I might have accepted it—might have taken the matter up with the attorneys. I would not be willing to state that we would not have taken it. If the Wilsons had offered less than the court ordered paid in its findings, I do not believe we would have accepted it—we would have consulted with our attorneys. I considered the contract forfeited in every way after the court had entered its order. Any further negotiations would have been taken up with our attorneys.''

The court found that the plaintiff did not at any time subsequent to the reversal of the former judgment offer to restore possession of the premises to the defendants; that a short time after the reversal of said judgment the defendants ''did offer to pay the amount due on the purchase price under the terms of said agreement, less the amount of the

rentals which the plaintiff might have received by the exercise of ordinary diligence for the use and occupation of said premises, during the period in which the defendants had been excluded therefrom, and on numerous occasions did endeavor to ascertain the state of their account with the plaintiff''; that the plaintiff ''refused to accept any sum of money whatsoever upon account of said agreement, or to carry out the terms thereof, and at all times subsequent to December 1, 1919, has refused to credit the defendants with the rentals received by it for the use and occupation of the property, or for the reasonable rental value thereof from the date of the eviction of said defendants.''

[4] It is true that the notice and demand served by the plaintiff on May 11, 1920, demanding payment of the amount of installments then due, and that such payment be made on or before the twenty-second day of that month, did not directly offer to restore possession to the vendee, if such payment be made. But the notice and demand were not necessary. The vendee being in default, the vendor might have held possession, lawfully, without any affirmative action. (*Glock* v. *Howard etc. Co.,* 123 Cal. 1, at p. 10 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].) The notice of May 11, 1920, was a voluntary offer, not constituting a waiver of default, unless accepted. [5] If in response to that offer payment of the demanded sum had been made, the vendee then would have been entitled to be restored to possession. The fact that the second vendee, Bachman, was in possession, is not alone sufficient to show that the company would have been unable to restore possession to Mrs. Wilson. [6] In the absence of pleading or proof that the rights of the vendee have not been reserved by the vendor in making a sale or conveyance to a third party, the fact that such contract or deed had been made is not presumed to be adverse or injurious to a vendee whose right to a deed had not yet matured when the third party transaction occurred. (*Brimmer* v. *Salisbury,* 167 Cal. 522 [140 Pac. 30].)

We are of the opinion that Mrs. Wilson has not been entitled to possession of the described real property at any time since September 1, 1916. Therefore she is not entitled to claim credit on her contract for the rental value of the premises while they have been occupied by the plaintiff; and,

indeed, on the facts as they now appear, she is not entitled to enforce the contract at all.

The judgment is reversed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 1, 1923.

All the Justices concurred.