[Civ. No. 2435. Third Appellate District.—June 19, 1922.]

## A. F. TROUGHTON et al., Respondents, v. MARTHA A. EAKLE, Appellant.

[1] VENDOR AND VENDEE—DELIVERY OF DEED—PAYMENT OF MONEY AS CONDITION PRECEDENT.—Where a contract for the sale of real property provides that the performance by the vendees of their covenants relating to payment is to be a condition precedent to the obligation of the vendor to convey title to the property, the vendees' payment of the money or offer to pay cannot be coupled with the condition that the conveyance be made before the money is transferred.

[2] Id.—Refusal of Offer—Tender—Remedies of Vendees.—If the vendees under such contract pay according to their agreement, or offer to pay, and the vendor refuses to accept the money, or if by the conduct of the vendor the vendees are prevented from making such payment or offer, by depositing the money as provided by section 1500 of the Civil Code, they are in a position to compel conveyance or to recover the money already paid.

[3] Id. — Conditional Ability to Pay — Noncompliance With Contract.—A person who, because of the instructions from his principal, cannot and will not pay certain money until he gets a certain conveyance has neither the ability nor willingness to satisfy the requirements of a contract which provides that such payment is to be a condition precedent to the obligation to make such conveyance.

[4] Id.—When Forfeiture Complete—Subsequent Acts by Vendees. Where, under a contract for the sale of real property, time is made of the essence, and a given payment by the vendees is to be made not later than a specified date, the forfeiture of the vendees resulting from not making such payment is complete on that date and such forfeiture cannot be undone by any act of the vendees on a later date.

[5] Id. — Forfeitures — Construction — Power of Court to Change Contract.—The rule that the law looks with disfavor upon forfeitures and that "a condition involving a forfeiture must be strictly interpreted against a party for whose benefit it is created" does not permit the courts to make for the parties a different contract from what they have agreed upon or resort to a strained and unnatural construction to defeat or nullify their clearly expressed purpose or intention.

[6] Id.—Ineffective Attempt to Make Payment—Equity.—Where the vendees under a contract of purchase make an effort to comply with their obligation as to payment, but, acting probably without legal advice, their effort is ineffective, the court, upon proper application therefor, can allow them such relief as is just and equitable in view of all the circumstances.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank Freeman, Brown & Albery and U. W. Brown for Appellant.

Thomas Rutledge and Seth Millington, Jr., for Respondents.

BURNETT, J.—Plaintiffs had judgment for the sum of $6,330, which they had paid defendant on a contract for the sale of real estate in Colusa County executed on September 6, 1918. The portions of said contract material to the inquiry herein are as follows:

"Said vendor (Martha A. Eakle) in consideration of the covenants, agreements and promises of said vendees (A. F. Troughton and E. L. Lewis) hereinafter set out, agrees to sell and convey unto said vendees the said lots of land hereinabove described; and said vendor agrees to convey said above described land to said vendees upon the performance of, and compliance with the following agreements, covenants, stipulations and conditions which said agreements, covenants, stipulations and conditions, and each of them are hereby considered conditions precedent to the fulfillment hereof by said vendor, viz. That said vendees shall and will pay to said vendor for the above described land the sum of $32,000, in lawful money of the United States to be paid at the times and in the manner hereinafter set out, to-wit: $1100.00 part and parcel of said purchase price to be paid on the execution and delivery of this contract; $400 further part and parcel of said purchase price is to be paid on or before October 1, 1918, $3000.00 further part and parcel of said purchase price is to be paid on or before October 1, 1919; together with the interest on the unpaid portion of said purchase price from the date of this agreement to October 1, 1919, at the rate of 6% per annum, to be paid on or before October 1, 1919; $3000.00 further part and parcel of said purchase price together with interest on the unpaid portion of said purchase price from October 1, 1919, to October 1, 1920, is to be paid on or before October 1, 1920, at the rate of 6% per annum; in event the full sum of $7500 on the purchase price of said premises together with interest on all deferred payments to the first day of October, 1920, at the rate of 6% per annum, have been paid in full said vendees are entitled to demand of and receive from said vendor and said vendor in that event shall be required to make and deliver to said vendees a grant, bargain and sale deed for the above described property, conveying said property to said vendees free and clear of encumbrances except taxes for the years 1919 and 1920, on condition that

said vendees execute and deliver to said vendor a first mortgage upon said above described premises, for the balance of the purchase price thereof, to-wit: the sum of $24,500 which amount is to be evidenced by a promissory note executed by said vendees to the order of said vendor payable five years after date and which shall bear interest at the rate of 6% per annum, to be compounded every twelve months if not paid. . . .

"Said vendees agree to purchase the above described land from said vendor and pay therefor the amount above mentioned at the times and in the manner and with interest on all deferred payments hereinabove set forth and in event of the conveyance to them of the land as hereinbefore provided for they further agree to make, execute and deliver to said vendor their promissory note for the sum of $24,500.00 for the remainder of the purchase price of said premises, and also securing same by a first mortgage lien upon said premises to said vendor as hereinabove provided. . . .

"It is agreed as a condition of the contract that said vendees shall and will secure the payments of both principal and interest hereinabove agreed to be paid on or before the 1st day of October, 1919, and on or before October 1st, 1920, by crop mortgages on the crops to be raised on said premises during the year 1919 and 1920. . . .

"As a further consideration for the contract of sale and purchase said vendees are to pay all state, county and other taxes or assessments upon said real property for the year 1919 and 1920.

"Should said vendees fail to perform any and all of the foregoing covenants and agreements and conditions upon their part to be performed they are to forfeit and lose all right in said land and all right in, under and through this contract, and in such event said vendor is to retain all sums which may theretofore have been paid her as and for rental and for as and for liquidated damages and it is agreed that such sums are to be so considered as rental and liquidated damages; and also in such event said vendor is hereby authorized and it is hereby agreed that she may immediately enter upon said land and exclude all persons therefrom and take full possession of the same to the exclusion of said vendees.

"It is further covenanted, understood and agreed that time shall be and is of the essence of this contract and of each of the provisions and conditions herein contained."

Plaintiffs did not pay the taxes for 1919 and they did not pay the money that was due on October 1, 1920.

To excuse their failure to pay said taxes they allege that "defendant had taken barley belonging to plaintiffs of the value of $330, for the purpose of paying the said taxes, but the defendant had willfully neglected to pay said taxes, notwithstanding that she had received the said property of plaintiffs so to do, and that plaintiffs, notwithstanding that defendant had already received more than enough money to pay said taxes, made a second offer far in excess of the amount required." This was denied in the answer, but as the other point is of decisive importance, we pass to its consideration.

[1] In view of the plain language of the contract it cannot be doubted that plaintiffs could not put defendant in default without paying or offering to pay the sum of money that was due on said October 1, 1920. The parties were very careful to provide that the performance by plaintiffs of their covenants was to be a condition *precedent* to the obligation of defendant to convey the title. When plaintiffs paid the money or made a valid offer to do so they could demand a conveyance, and not before. The covenants are not concurrent or reciprocal, as sometimes termed, and hence it necessarily follows that plaintiffs' payment of the money or offer to pay could not be coupled with the condition that the conveyance be made before the money was transferred. Plaintiffs' obligation was absolute and unconditional to pay before they could call upon defendant to act at all. [2] But if they paid according to their agreement, ·or offered to pay and defendant refused to accept the money, or if by the conduct of defendant plaintiffs were prevented from making such payment or offer, by depositing the money as provided by the statute (sec. 1500, Civ. Code) they would be in a position to compel conveyance or to recover the money already paid. This seems plain on principle and is in consonance with the authorities cited by appellant, a few of which may be noticed.

In *Glock* v. *Howard,* 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713], the court said: "In the case at bar, the payment of the final amount under the contract, at the time and in the manner agreed upon, was a condition precedent to the right of the vendee to demand a conveyance. Upon his failure to make payment, the vendee committed a breach, and no affirmative act upon the part of the vendor was necessary to bring about this result. . . . The vendor, in refusing to accept the tender and to repay the money, is neither violating this contract, nor rescinding it, nor treating it as at an end. He is standing squarely upon its terms. . . . The contract is made to depend upon a condition precedent. By it no right is to vest in the vendee until certain acts of payment have been done by him and a court of equity, no more than a court of law will relieve a vendee under such circumstances from the penalties arising from the breach of such condition, in the absence of an equitable showing to excuse his default."

In the concurring opinion therein by Mr. Justice Harrison it was said: "Under the agreement between the plaintiff and the defendant, neither could maintain an action thereon against the other without having performed all of the conditions previously to be performed by him. The plaintiff could not maintain an action for a conveyance of the land until he had paid or tendered the money which he was to pay therefor. . . . Whether the action be to enforce the contract, or to recover damages for its breach, it is incumbent upon the plaintiff in such action to show a performance on his part of all the acts required to be performed by him, before he can call upon the other to comply with his part of the agreement, or to respond in damages for a failure to do so."

The contract therein was similar to the one involved herein in that "time was made of the essence of the contract and performance by the plaintiff was made a condition precedent whereon depended the agreement of defendant to convey and if plaintiff failed to perform his covenants, defendant was to be released from all obligations to convey and plaintiff was to forfeit all moneys paid and all rights under the agreement."

In *Schwerin Estate Realty Co.* v. *Slye,* 173 Cal. 170 [159 Pac. 420], "time was expressly made of the essence of the agreement of January 18, 1913, and failure to perform by defendants, under the terms of said contract, would work a forfeiture of all rights of the vendees leaving the sums previously paid in the possession of the vendor as liquidated damages." The court said: "We cannot escape from the conclusion that by failing to prove their readiness, ability and willingness to perform their part of the contract within the time limited therein the defendants utterly failed to establish their right to any relief. . . . Under the terms of the contract no affirmative act on the part of the vendor was necessary to place the vendees in default. It expressly made failure to comply with its terms within the time limited by the parties of the second part (the vendees) an automatic termination of all of the vendor's obligations in law and equity," and quotation was made from the Glock opinion as embodying the doctrine that was applicable to the facts of the case.

Unless we are to depart radically from the terms which the parties herein deliberately adopted to express their intention, we must hold that plaintiffs were required to perform their agreement or offer to do so before they could place defendant in default.

But if their performance was made precedent and unconditional, it necessarily follows that if they relied upon an offer of performance or tender it must also be absolute and unconditional in order to impose upon defendant an obligation to convey. An offer to perform could, of course, be no more nor less than a legal effort to do what the contract required, that is, to pay the money unconditionally. But respondents admit that "the plaintiffs did not have the money themselves to make the final payment falling due October 1st, and in order to prevent their forfeiture made arrangements with a Miss Forgeus, by which she agreed to advance the money to them for this purpose upon the condition that the respondents would convey the land to her, Miss Forgeus, *making it a condition* that the money should not be paid over to Mrs. Eakle except upon condition that Mrs. Eakle execute her deed." The evidence presented by plaintiffs shows, however, a more complicated situation than is thus indicated by their statement.

J. M. Stovall, the cashier of the Bank of Williams, who was the custodian of the money, testified that his authority was conferred by telephone from Miss Forgeus; that she told him "to pay Mrs. Eakle $5,000 on a deed to the place"; he called Mrs. Eakle on the phone and could not get her but on that day she came into the bank, about noon the first day of October, that he "made a tender of the money and she refused it, and it was never placed to her credit, as she refused to have it transferred on the books." The following questions and answers also appear on his direct examination: "Q. Did she give any reason for refusing? A. I don't recall. Q. Did you offer any money to her upon any condition? A. No, sir. Q. It was a straight unequivocal offer? A. Yes, sir. Q. Without any qualifications? A. Yes, sir. Q. Did you specifically tell her that that was the money to cover the Troughton and Lewis payment? A. No. Q. Did she know what it was for? A. Yes; because she was talking to Mr. Troughton at the time; she knew that that was the transaction. Q. Did she say anything about executing the deed or not, or was it mentioned? A. Nothing mentioned." Quite a different color was given to the foregoing by his testimony on cross-examination. Therein he testified that he received on said day a telephonic communication from Miss Forgeus, which she confirmed by letter a day or two after. Then followed these questions and answers: "Q. Well, I understood you to say that the telephonic communication was that the money the $5,000 was to be given to Mrs. Eakle upon a deed to Miss Forgeus; you were transacting the business for Miss Forgeus? A. Yes, sir. Q. You were not representing Mr. Troughton or Mr. Lewis or Mrs. Eakle? A. No. Q. You were representing her entirely? A. Yes, sir. Q. This money was to be paid over to Mrs. Eakle upon title being conferred to Miss Forgeus? A. Yes, a title to Miss Forgeus. Q. So your transaction had nothing to do with any relationship between Mrs. Eakle and Mr. Troughton and Lewis at all? A. Excepting we had to have the deed. The Court: From what? A. From Mrs. Eakle to Miss Forgeus. Mr. Freeman: Q. And she would not make that deed and said you need not deposit that money for any such purpose? A. Yes, sir, she refused to have it placed to her credit." In the redirect examination ap-

pear the following questions and answers: "Q. On the first of October did you tell Mrs. Eakle anything about that deed to Miss Forgeus or did you even know about it at that time? A. She phoned to us about the deed; and as to this money, and said to pay Mrs. Eakle on the delivery of the deed. Q. What did you tell Mrs. Eakle? A. I told her there was $5,000 there, on the delivery of the deed."

In the recross-examination we find the following: "Q. The fact is that you had this $5,000 from Miss Forgeus and that it was her money and it was to be applied, upon a purchase of that property by her? A. Yes. . . . Q. You would not have given up this money to Mrs. Eakle until you got that deed? A. No. Q. Or to anybody else? A. No. Q. And that deed would have been to Miss Forgeus with a clear title? A. No, not a clear title at that time; because there was no mention made of a clear title in the office. Q. But it was Miss Forgeus' money? A. Yes, until the deed. Q. Until the deed to Miss Forgeus had been executed and delivered to you? A. Yes, that was her instructions."

While in the direct examination the witness speaks of a "tender" of the $5,000, there is no claim that he actually proffered the money. If he had intended to make an unconditional payment he would of course have offered her the money or its equivalent. However, if from this part of his testimony it could be said that by her refusal to accept his proposal he was excused from actually producing the money or depositing it in her name, and thus a case was made out within the contemplation of section 1500 of the Civil Code, providing: "An obligation for the payment of money is extinguished by a due offer of payment if the amount is immediately deposited in the name of the creditor with some bank of deposit within this state of good repute and notice thereof is given to the creditor," it is quite plain from the consideration of the whole of the testimony of the witness that a very different situation is presented. While there is an apparent conflict between his direct and cross-examination there can be no doubt that he promised to pay the money only upon condition that a deed be executed either to plaintiffs or to Miss Forgeus. As we have seen this was not such offer as the contract required. Indeed, the fair inference from the whole of his

testimony is that he insisted upon a conveyance to Miss Forgeus as a condition precedent to the payment of the money. Manifestly, appellant was under no obligation to give heed to that proposal. Her duty was to convey to *plaintiffs* upon their payment or unconditional offer of payment of said sum.

Moreover, under section 1495 of the Civil Code, "an offer of performance is of no effect if the person making it is not able and willing to perform according to the offer." [3] It clearly appears from the testimony of the witness that he could not and would not pay over the money until he got the deed for Miss Forgeus. Hence he had neither the ability nor willingness to make the payment in accordance with the contract of the parties herein. The fact is that the witness was acting for Miss Forgéus, and his chief concern was to secure for her the conveyance of the property.

Under the circumstances, whatever offer or promise was made by Mr. Stovall did not put appellant in default. At least it involved a condition which he had no right to impose. But if it could be said that an offer to pay the money if appellant would execute a deed might be regarded as satisfying the requirements of the contract and that Mr. Stovall disregarded his instructions and made such offer, the promise was futile because of his inability to perform. (*Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001] ; *Allen* v. *Chatfield,* 172 Cal. 60 [156 Pac. 47].)

It is to be observed that the complaint of plaintiffs does not allege a tender of the money on said October 1st, but that they "deposited said sum of $3,000, together with the interest due on the unpaid portion of said purchase price from October 1, 1919, to October 1, 1920, in the Bank of Williams to the credit of said defendant, and that plaintiffs were ready and willing on said first day of October, 1920, to execute and deliver to said defendant the said mortgage and promissory note, but the defendant refused to meet with said plaintiffs for the purpose of accepting said note and mortgage and to convey said property.

"That immediately upon the deposit of said money said defendant was notified to come and take it, and was notified that said plaintiffs were ready and willing to execute and deliver said promissory note and mortgage, but defendant

refused to accept said money or said promissory note and mortgage and refused to execute and deliver said deed, and defendant willfully concealed herself so that plaintiffs could not demand said conveyance.'' As we read the record, all these allegations are unsupported by the evidence. They did not deposit the money to the credit of appellant; they were not able and willing to execute the note and mortgage, since they had not made nor suitably offered to make the payment, which was a precedent condition to the execution of said instruments, and we find no evidence that defendant refused to meet with plaintiffs for said purpose, to accept the money or to execute the deed as required by the contract.

We may add in this connection that particular emphasis is placed upon the circumstance that appellant on said October 1st went to the city of Colusa, and it is claimed that this was for the purpose of concealing herself. The proof to the contrary is that she presented herself at the bank in Williams in the forenoon and thus afforded respondents an opportunity to make the payment and demand the conveyance, and the uncontradicted testimony of U. W. Brown, Esq., her attorney, who testified that she came to his office in Colusa about 2 o'clock in the afternoon of that day; that Troughton called Mr. Brown by telephone shortly after 2 o'clock and said he was going to Colusa, and the latter informed him that Mrs. Eakle was then in his office and Troughton said he was coming over ''to prepare and execute the papers''; that Mr. Brown went to work preparing the deed and mortgage, deed from Mrs. Eakle to Troughton and the mortgage from Troughton and his wife to Mrs. Eakle, and Troughton said he would be right over. Mrs. Eakle then came to Mr. Brown's office several times to know if Troughton had come, and the last time she was there was about 5 o'clock, and she said she was obliged to return to Williams by 6 o'clock. On Mr. Troughton's arrival there Mr. Brown asked him why he had been so long in reaching Colusa, and he said he was trying to get into communication with his wife in Woodland. Mr. Brown's veracity is unimpeached and his testimony is not disputed, and that there was anything surreptitious or sinister in the conduct of appellant is entirely inconsistent with his statements on the witness-stand.

Any payment or offer of payment on the part of plaintiffs would have been excused, of course, on principle, as well as by authority of subdivision 1 of section 1511 of the Civil Code, if appellant had concealed herself or had refused an unconditional offer of the money, but we find no such situation. We regard the only reasonable inference from the testimony to be that appellant went to Colusa for the purpose of consulting her attorney as to how she might protect her own interest and also be prepared to carry out her contract if plaintiffs met the situation, but that respondents failed to perform or offer to perform the primary obligation resting upon them, and hence appellant was not called upon to take any affirmative action.

It may be, as suggested by respondents, that if she had accepted the conditional offer, she would have received the money and the note and mortgage would have been executed, but she had the legal right to stand upon her contract and to insist that respondents comply with its terms.

It may be added that respondents rely also upon what occurred the following day set forth in the complaint as follows: "That on the second day of October, 1920, plaintiffs demanded of defendant the conveyance of said property and again tendered to defendant, the sum of $3,000 together with the interest due on the unpaid portion of said purchase price from October 1, 1919, to October 1, 1920, and were ready and willing and offered to the defendant, to make and execute the note and mortgage agreed on in said agreement, and to deliver the same to the defendant, and to do and perform all of their agreements under the said agreement upon the like performance by the defendant and have duly performed all the conditions of said agreement on their part." [4] But as we have seen, time was made of the essence of the contract and the payment was to be made not later than October 1st. If any forfeiture occurred it was complete on that date and it could not be undone by any act of respondents on a later date.

Besides, it appears from the record that the offer was made on October 2d on the express condition that she would execute a deed to Troughton and the latter to Miss Forgeus before appellant should receive the money. In-

deed, it is admitted by respondents that "plaintiffs were able only to pay this money to defendant upon condition that she execute her deed." Such was not the engagement of the parties, and there is no question of their right to make the unconditional payment an essential prerequisite to entitle plaintiffs to demand a deed.

[5] It is true that the law looks with disfavor upon forfeitures and has declared that "a condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created" (sec. 1442, Civ. Code), but this does not mean that the courts may make for the parties a different contract from what they have agreed upon or resort to a strained and unnatural construction to defeat or nullify their clearly expressed purpose or intention.

But respondents urge that it "would be manifestly unjust for defendant to be permitted to keep the purchase price paid on the ground of a forfeiture," and appellant rejoins that it would be iniquitous "for plaintiffs to use defendant's land two years, and take the crops therefrom for their own use, without paying a nickel's rental or consideration therefor."

[6] At any rate, the courts are ready upon the slightest equitable consideration to relieve parties, upon such terms as may be just, from the results of a forfeiture. The principle is embodied in section 3275 of the Civil Code as follows: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

We see no reason why such relief might not be had in the present case as it does not fall within the exception. The plaintiffs made an effort to comply with their obligation, but, acting probably without legal advice, their effort was ineffective. Their complaint was framed, as we have seen, upon a different theory and it would be necessary to have it amended to justify the relief that we have suggested. We perceive no valid objection to such procedure and if that course be taken, the court can allow whatever is just and equitable in view of all the circumstances.

(*McDonald* v. *Kingsbury*, 16 Cal. App. 244 [116 Pac. 380].)

We think the judgment should be reversed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 17, 1922.

All the Justices present concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.