**WUCHNER v. GOGGIN.**

No. 11878.

United States Court of Appeals
Ninth Circuit.

June 3, 1949.

262

William W. Bearman and Raymond B. McConlogue, both of Los Angeles, Cal., for appellant.

Gendel & Chichester, of Los Angeles, Cal., for appellee.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

STEPHENS, Circuit Judge.

Jennie Wuchner appeals from an order of the United States district court denying a petition for the review of an order of the referee in bankruptcy on an order to show cause directing her to convey certain real property to George T. Goggin, Trustee in Bankruptcy of the Estate of Charles E. Hill.

Jennie Wuchner and Charles E. Hill entered into a contract of purchase and sale by the terms of which Hill agreed to purchase from Wuchner certain business real property for the sum of $5500.00. The sum of $349.38 was paid, upon the execution of the contract (June 5, 1945) and the balance of the purchase price was payable in monthly installments of $200.00 each beginning July 1, 1945. Time was of the essence and the whole purchase price was payable at Wuchner's option upon failure of Hill to perform any contract term or the contract could be cancelled and forfeited at Wuchner's election. Upon or after payment by Hill of the total of $1500.00 on the contract, he was entitled to receive from Mrs. Wuchner a deed and a policy of title insurance showing the property to be free of encumbrances except certain current taxes and sums remaining unpaid on the contract purchase price and interest, and Mrs. Wuchner was entitled to receive a note secured by trust deed in the amount unpaid. The contract further provided that the "Buyer shall not assign any interest under the contract without the written consent of the seller." (Consent was never given.) The last sentence of the contract read: "It is further agreed that any default shall not become effective for thirty days (30) from date of said default."

The first two monthly installments were paid. After four months had elapsed without further payment Mrs. Wuchner, on February 5, 1946, notified Hill that she was exercising her option to declare the full unpaid purchase and sale price with interest ($4912.63) due and payable. Three days later (February 8, 1946) Mrs. Wuchner sent another letter to Hill in which she declared the contract forfeited and cancelled. At this time and for the full period of events concerning this proceeding Mr. Hill was by law restrained in the San Francisco bay area. Three days after Mrs. Wuchner mailed the forfeiture-cancellation letter, a letter was mailed to her signed "H. F. Poyet, Henry F. Poyet, President." A set of escrow instructions signed by Hill and his wife, Dora M. Hill, was enclosed. We quote the letter, in part:

"In accordance with our previous letter to you and in accordance with your demand of February 5th, 1946 * * * we have prepared the instructions for your signature and ask that if you will execute them, and return to us we shall be pleased to order the policy of title insurance from such company as you prefer or if you have no preference we shall order it from the Title Insurance and Trust Company of Los Angeles, forwarding you a copy of the preliminary report.

"This is to advise you that there is on deposit at this time the full amount of your demand of $4912.63 subject to the escrow instructions for clear title as therein set forth.

"Awaiting your instructions and pleasure, * * *"

On the same day that the escrow instructions were sent to Mrs. Wuchner, Angelus Escrow Service Corporation (Poyet) accepted and acted upon the following statement:

"February 11, 1946.

"Angelus Escrow Service Corporation.

"Referring to the escrow instructions of Charles E. Hill in the above numbered escrow which instructions are made a part of this instruction by reference, we the undersigned hand you the sum of $4912.63 which you are to use when you can comply with the foregoing instructions of Charles E. Hill purchasing the property therein described free of liens or encumbrances as therein set forth and in addition thereto you will record for us concurrently with the deed from Mrs. Jennie Wuchner to Charles E. Hill a deed from Charles E. Hill and Dora Hill, his wife, to Frank Bruno and Teddy Berg to the above described property you will have the title

showing free and clear of encumbrances said property in. Frank Bruno and Teddy Berg. * * *

"/s/ Frank Bruno,
.Teddy Berg."

"I, Charles E. Hill, agree to execute the deed in accordance with the foregoing instructions and agree to comply therewith.

"Charles E. Hill

"By /s/ Dora M. Hill,
"His Attorney in Fact."

The sum of $4,912.63 was not, nor was any other sum, "handed" to Mrs. Wuchner by Angelus Escrow Service Corporation or by Mr. Poyet. Without doubt, Bruno and Berg deposited $4,912.63 with the escrow company as recited in the above statement, but it appears that neither the statement nor the fact of its existence was ever revealed to Mrs. Wuchner until at the show cause hearing. How long the money was left with the escrow company is not shown by the record. It is agreed that Mrs. Hill acted under a general power of attorney from her husband, Hill.

On February 14, 1946, Mrs. Wuchner returned the escrow instructions, unsigned, to the sender accompanying them with a letter explaining her action with the following statement:

"Noncompliance with the terms of the contract * * * has caused same to be forfeited and cancelled."

On February 19, 1946, or five days after she returned the escrow papers, Mrs. Wuchner filed suit in state court to quiet title and to foreclose and forfeit any claimed right of Hill in the contract or the property. A week later Hill, with his wife, filed suit in a state court praying a declaratory judgment that the contract was in effect and for damages.

On April 5, 1946, Hill, upon an involuntary petition, was adjudged a bankrupt and George T. Goggin was appointed trustee and he qualified promptly.

On June 28, 1946, the balance of the purchase price with accrued interest was tendered Mrs. Wuchner by the trustee, and on July 1 she rejected the tender.[1]

Mrs. Wuchner at all times has contended that the bankruptcy court was without jurisdiction over the property because, as she claims, at the time the petition in bankruptcy was filed and at the time bankruptcy was adjudicated, Hill did not have possession of the property and had no interest in or any rights to the property and therefore the trustee in bankruptcy could not and did not take legal possession or acquire jurisdiction over it. In these circumstances, Mrs. Wuchner claimed, the problem between Mrs. Wuchner and Hill or any one claiming through Hill, was not a matter of bankruptcy but one arising out of bankruptcy, and was wholly within the jurisdiction of the plenary actions pending in the state court.[2] The property, it is argued, was abandoned, and for the bankruptcy court to have jurisdiction it must be shown that the bankrupt had possession as of right; pos-

---

[1] In Glock v. Howard and Wilson Colony Company, 123 Cal. 1, at page 13, 55 P. 713, 717, 43 L.R.A. 199, 69 Am.St. Rep. 17, the Supreme Court of California quotes from Pomeroy in his Equity Jurisprudence, section 455: "* * * It is also equally certain that when the contract is made to depend upon a condition precedent,—in other words, when no right shall vest until certain acts have been done; as, for example, until the vendee has paid certain sums at certain specified times,—then, also, a court of equity will not relieve the vendee against the forfeiture incurred by a breach of such condition precedent." And, 123 Cal. at page 14, 55 P. at page 718, the court says: "It would be to the last degree unjust and inequitable to allow a vendee, after his default under such a contract, to put the vendor in default by a mere tender.

The practical effect of such a rule would be that a vendee, without risk, could speculate indefinitely in the land of the unfortunate vendor. The vendee would enter into a contract in which time would be declared of the essence, and stipulate under condition precedent, as in this case, to make payment at a certain time. Failing to make payment, he would, three months, six months, one year, or, as in this case; over three years, after the date of the failure, make an offer to perform, and, if the land had risen in value, according to the theory of respondent here, could compel performance; but in every case he could recover the moneys paid."

[2] In Cline v. Kaplan, 323 U.S. 97, 98, 65 S.Ct. 155, 156, 89 L.Ed. 97, it is stated that "if the property is not in the court's possession and a third person asserts a bona fide claim adverse to

session without any legal right is no possession for purposes of this action, but constitutes trespass.

In a note to his brief the trustee suggests that counsel consented to the jurisdiction of the bankruptcy court. If consent is given, then matters arising out of bankruptcy, as well as matters in bankruptcy, may be tried by the bankruptcy court. We have read the several pages of random talk in the record from which appellee but briefly quotes. We are of the opinion that counsel for Mrs. Wuchner never intended and did not consent to the jurisdiction of the bankruptcy court to hear any part of the issues raised in the show cause order except the issue of possession and did not consent to abide by the court's order as to that issue.

The trustee contends that Hill was in possession when the latter was declared a bankrupt, and that the trustee thereupon took possession and hence jurisdiction was properly in the bankruptcy court to determine the rights of any parties to the property. The facts are that Hill went into possession of the property under the contract and never surrendered possession or the right of possession under its terms.

The bankruptcy court in order to determine its own jurisdiction had to determine whether it had possession of the property, actual or constructive. Taubel-Scott-Kitzmiller Company, Inc. v. Fox, et al., 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. Where it has possession it can, in summary proceedings, determine controversies involving substantial adverse claims. Ibid. The test of such jurisdiction is not title in, but possession coupled with a colorable claim of right by the bankrupt at the time of his adjudication. When and not before such possession is determined to be in the bankrupt, the bankruptcy court may consider and adjudicate questions of title. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876.[3] Where the jurisdictional allegation of possession is made and denied, the party making the allegation has the burden of proving the challenged allegation and if it is

the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' * * * But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. * * * It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. * * * Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. * * * "

[3] In Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876, the court states that "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy."

In Taubel-Scott-Kitzmiller Company, Inc. v. Fox et al., 264 U.S. 426, 432, 44 S. Ct. 396, 398 68 L Ed. 770, it is ruled that

"The possession, which was thus essential to jurisdiction, need not be actual. Constructive possession is sufficient. It exists where the property was in the physical possession of the debtor at the time of the filing of the petition in bankruptcy, but was not delivered by him to the trustee; where the property was delivered to the trustee, but was thereafter wrongfully withdrawn from his custody; where the property is in the hands of the bankrupt's agent or bailee; where the property is held by some other person who makes no claim to it; and where the property is held by one who makes a claim, but the claim is colorable only. As every court must have power to determine, in the first instance, whether it has jurisdiction to proceed, the bankruptcy court has, in every case, jurisdiction to determine whether it has possession actual or constructive. It may conclude, where it lacks actual possession, that the physical possession held by some other person is of such a nature that the property is constructively within the possession of the court. * * * But in no case where it lacked possession, could the bankruptcy court, under the law as originally enacted, nor can it now (without consent) adjudicate in a summary proceeding the validity of a substantial adverse claim."

266

not proved or admitted, the referee must dismiss the proceeding. City of Long Beach v. Metcalf, 9 Cir., 103 F.2d 483, 487.

The referee found (and the District Judge approved on review) that the trustee had the possession of the property necessary to the bankruptcy court's jurisdiction and proceeded to adjudicate the matter by making the order requiring Mrs. Wuchner to make and deliver a deed to the trustee upon payment of the unpaid purchase price with interest.

The court was right in taking jurisdiction and we turn to a consideration of the facts (they are not in dispute) to ascertain under California law whether the contract was validly existent on the 5th day of April, 1946, the date of the bankrupt's adjudication and of the claimed possession of the property giving the court jurisdiction.

 The court made a finding of fact, denominated a conclusion, that certain assurances were given Mrs. Hill by Mrs. Wuchner's son lulling her into a false security, which waived the contract provision that time was of the essence in the payment of the monthly installments. Whether or not they did turns out to be of no consequence. At the very least the notice informed Hill that Mrs. Wuchner required him thereafter to live up to the contract and he took prompt action by which he sought to pay the demanded sum through the arrangement with Bruno and Berg, as to which Mrs. Wuchner was kept completely in the dark. Mrs. Wuchner, however, claims that the escrow instructions sent to her without the Bruno and Berg letter, by their terms were not within the provisions of the contract. It is clear that Mrs. Wuchner could not receive the amount of her demand of $4912.-63, or any sum to be credited against the delinquent payments, until she agreed to the terms and conditions of the escrow instructions. She was not required by her contract to do anything about a deed until, as a condition precedent, she had been paid at least $1500.00. Much less than such sum had been paid. It may be argued from certain authorities that since time was of the essence of the contract and payment was made a condition precedent there was no duty imposed upon Mrs. Wuchner to act in any manner in regard to a deed until the required sum had actually been paid to her. However, without passing upon such point we do hold that the very most that could be required of her was to require her to exchange the deed concurrently with the exchange of the money and that where a policy of title insurance must accompany the deed a reasonable and usual method of the mutual exchanges mentioned is through escrow. We think King v. Stanley, 32 Cal. 2d 584, 197 P.2d 321, goes no further. However, money paid into escrow upon instructions not agreed to by a seller and which go beyond reasonable requirements for securing concurrent exchange of purchase price for deed and title insurance, cannot be held to be a legal tender unless the seller may be deemed to have waived all objections to the additional requirements under sections of the California code.[4] Where, however, the instructions contain requirements for either the offeror or the offeree which, on their face, are not within the power of the offeror or offeree, no waiver takes place as to the offeree.[5] The escrow proposed required Mrs. Wuchner to agree to sacrifice up to three months interest, inasmuch as it provided for no interest beyond the date of the exercise of her option declaring the whole purchase price due and payable. Mrs. Wuchner also had to agree to as much as three months

4 Cal.Civ.Code § 1501: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and which could be then obviated by him, are waived by the creditor, if not then stated."

Cal.Code Civ.Procedure § 2076: "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount * * * or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

5 Cal.Civ.Code § 1495: "An offer of performance is of no effect if the person making it is not able and willing to perform according to the offer."

delay in the receipt of her money either for the unpaid installments only or for the full unpaid balance of the purchase price. The escrow instructions required that she obligate herself for the possible payment of certain costs and attorney's fees. She had to agree that the title company could "withhold and suspend" action on the escrow if any controversy should arise between the parties to it or any third party. She had to give a lien on escrow papers and money for all costs, expenses and liabilities. These requirements are outside her contract. All that she had to show that she would get her money was a mere statement in writing by Mr. Poyet as president of an escrow company that there was $4912.63 on deposit with the company to be held by it until, under the terms of the escrow, it could be paid out. The money was not deposited with someone agreed to by both parties or in accord with the law appertaining to tenders. The contract did not require Mrs. Wuchner to trust the company with money payable to her. The company had the power to misuse the money or to return it to the party making the deposit. She was under no duty of accepting Mr. Poyer's statement that the money was on deposit. These are not idle or extreme suppositious possibilities.[6] Mrs. Wuchner, as we have seen, knew nothing as to the strangers Bruno and Berg who had deposited the money under conditions of their own making, including the requirement that a deed to them of the property in suit should be made and delivered by Mr. and Mrs. Hill. Notwithstanding their written statement in the Bruno and Berg letter to the escrow company that they would make and deliver the deed, it was a requirement that Mrs. Wuchner could not compel nor was she under any duty to bring such action about. The money on deposit and the instructions accompanying it could have been withdrawn without Mrs. Wuchner's knowledge or consent or very possibly without her ever having learned of Bruno and Berg's connection with the affair. She learned of it only at the hearing. It must be borne in mind that a contract existed as to which Mrs. Wuchner and Mr. Hill were parties, each subject to the terms provided.[7] When Mrs. Wuchner sought to accelerate the payments because of the default in making them she was acting within the ambit of the contract.[8]

The case of Troughton v. Eakle, 58 Cal.App. 161, 208 P. 161 (petition to Supreme Court for rehearing denied) is strikingly, though not wholly, like the instant case in fact, almost perfectly applicable in principle, and we quote freely in the margin.[9]

---

[6] The proposed instructions were complicated beyond their usefulness in the simple business at hand and contain confusing provisions culminating in the final sections for signature of both buyer and seller in which it is plainly stated that either may take advantage of his own default in not living up to the instructions and solely because of either one's own fault he is given the right to terminate the escrow.

[7] See Pitt v. Mallalieu, 85 Cal.App.2d 77, 83, 192 P.2d 24, 28: "Since the escrow instructions prepared by plaintiff did not supplant the agreement (Keelan v. Belmont Company, 73 Cal.App.2d 6, 12, 165 P.2d 930), defendant's refusal to sign them was no excuse for plaintiff's failure to proceed with his performance of an obligation as to which time was of the essence. The requirements for his deposit of the balance within 90 days was not conditioned upon either defendant's signing escrow instructions at a definite time, upon the form of deed she would use or upon her failure to consent to a modification of the agreement." And at page 81 of 85 Cal.App.2d, at page 27 of 192 P.2d the court states: "Upon his failure to make payment the vendee committed a breach, and no affirmative act by the vendor was necessary to terminate the vendee's right of enforcement."

[8] Keelan v. Belmont Co., 73 Cal.App.2d 6, 12, 165 P.2d 930, 933. "Escrow instructions are a customary and necessary means of consummating real estate transactions, they do not take the place of the agreement for sale but merely carry it into effect."

[9] 58 Cal.App. at page 167, 208 P. at page 163, it is said: "Unless we are to depart radically from the terms which the parties herein deliberately adopted to express their intention, we must hold that plaintiffs were required to perform their agreement or offer to do so before they could place defendant in default.

"But if their performance was made precedent and unconditional, it necessarily follows that, if they relied upon an offer of performance or tender, it must also be absolute and unconditional in or-

The referee leans heavily upon King v. Stanley, 32 Cal.2d 584, 197 P.2d 321, and Boone v. Templeman, 158 Cal. 290, 110 P. 947, 139 Am.St.Rep. 126.[10] As we have

der to impose upon defendant an obligation to convey. An offer to perform could, of course, be no more nor less than a legal effort to do what the contract required; that is, to pay the money unconditionally. But respondents admit that —'the plaintiffs did not have the money themselves to make the final payment falling due October 1st, and, in order to prevent their forfeiture, made arrangements with a Miss Forgeus by which she agreed to advance the money to them for this purpose upon the condition that the respondents would convey the land to her, Miss Forgeus, making it a condition that the money should not be paid over to Mrs. Eakle except upon condition that Mrs. Eakle execute her deed.' The evidence presented by plaintiffs shows, however, a more complicated situation than is thus indicated by their statement." And at pp. 169, 170:

"* * * While there is an apparent conflict between his direct and cross-examination, there can be no doubt that he promised to pay the money only upon condition that a deed be executed either to plaintiffs or to Miss Forgeus. As we have seen this was not such offer as the contract required. Indeed, the fair inference from the whole of his testimony is that he insisted upon a conveyance to Miss Forgeus as a condition precedent to the payment of the money. Manifestly, appellant was under no obligation to give heed to that proposal. Her duty was to convey to plaintiffs upon their payment or unconditional offer of payment of said sum.

"Moreover, under section 1495 of the Civil Code, 'An offer of performance is of no effect if the person making it is not able and willing to perform according to the offer.' It clearly appears from the testimony of the witness that he could not and would not pay over the money until he got the deed for Miss Forgeus. Hence he had neither the ability nor willingness to make the payment in accordance with the contract of the parties herein. The fact is that the witness was acting for Miss Forgeus, and his chief concern was to secure for her the conveyance of the property.

"Under the circumstances, whatever offer or promise was made by Mr. Stovall did not put appellant in default. At least it involved a condition which he had no right to impose. But if it could be said that an offer to pay the money if appellant would execute a deed might be regarded as satisfying the requirements of the contract, and that Mr. Stovall dis-

regarded his instructions and made such offer, the promise was futile because of his inability to perform. Doak v. Bruson, 152 Cal. 17, 91 P. 1001; Allen v. Chatfield, 172 Cal. 60, 156 P. 47.

At pp. 172, 173, it is said: "But, as we have seen, time was made of the essence of the contract, and the payment was to be made not later than October 1st. If any forfeiture occurred, it was complete on that date, and it could not be undone by any act of respondents on a later date.

"Besides, it appears from the record that the offer was made on October 2d on the express condition that she would execute a deed to Troughton and the latter to Miss Forgeus before appellant should recover the money. Indeed, it is admitted by respondents that 'plaintiffs were able only to pay this money to defendant upon condition that she execute her deed'. Such was not the engagement of the parties, and there is no question of their right to make the unconditional payment an essential prerequisite to entitle plaintiffs to demand a deed."

10 Appellee urges that the Boone case is authority for the rule that if the vendor demands the entire purchase price, the delivery of a deed and the payment of the balance of the purchase price become concurrent conditions, and that it controls our case. It is stated therein that [158 Cal. 297, 110 P. 950] "Templeman did not exercise his option to declare the whole price due upon the default for sixty days in paying any of the installments, but suffered it all to become due by lapse of time. Where in a contract for the sale of land the price is made payable in installments at different times and the deed is to be made when the whole is paid, the vendor may, upon failure to pay any intermediate installment, forthwith sue for its recovery. But, if he allows the whole to become due, the payment of the price then becomes a dependent and concurrent condition. Nonpayment alone does not put the vendee in default. The vendor must tender a deed as a condition to demanding payment of the price, and he cannot, without such tender, declare a forfeiture, or maintain a suit either for the whole price, or for an intermediate installment."

But appellee does not adhere to the point of decision in the cited case which is that the vendor suffered payments to be made long after due and in effect waived the provisions of the contract that they should be paid upon fixed dates. See also Hayt v. Bentel, 164 Cal. 680, 130 P. 432.

hereinbefore intimated, we do not think there is anything in either case contra to the law as defined in the Troughton v. Eakle case, supra, unless the King v. Stanley case tends to modify the apparent holding in the latter case that the purchase money must actually be delivered or offered before any duty is ripened to the seller of real estate to deliver a deed.

In the instant case it is not so much that the escrow was resorted to that Mrs. Wuchner is complaining as the fact that the terms of the escrow as to which she had no voice were prejudicially outside the provisions of the contract. Moreover she had no voice in selecting the holder of money pending completion of the escrow.

Significantly, the court in Troughton v. Eakle, supra, says, 58 Cal.App. at page 172, 208 P. at page 165: "It may be, as suggested by respondents, that if she had accepted the conditional offer, she would have received the money and the note and mortgage would have been executed, but she had the legal right to stand upon her contract and to insist that respondents comply with its terms."

We hold that the attempted payment of the unpaid contract or installment price was abortive because its acceptance, through the proposed escrow, required assumption of obligations not provided for in the contract and because it was made up with conditions in the Bruno and Berg letter which were never communicated to Mrs. Wuchner. The full status of the alleged tender was never conveyed to the seller; and for the additional reason that the offer as made by the instructions required Hill to do things not wholly within his power to do. No other attempt to conform to the contract was ever made until the trustee made his tender on the 28th of June, 1946.

On February 5, 1946, when Wuchner served the acceleration notice, there were four installments and some taxes unpaid (the contract provided that Hill should pay 1945-46 and subsequent taxes). Assuming but not holding that Mrs. Wuchner was not in a position to declare a default owing to her son's assurances to Mrs. Hill that she should not be concerned about the payments, such immunity expired soon after the receipt of the notice as neither he nor his wife could thereafter be laboring under the idea that the contract was not to be lived up to. Should we say that a reasonable time for Hill to have acted effectively after receiving the acceleration notice was ten days, and should we give the contract provision that "* * * any default shall not become effective for Thirty Days (30) from date of said default" the fullest possible meaning, Hill would have been in default March 15, 1946. Since the contract provides that time is of its essence and "in the event of failure to comply with the terms hereof [contract] by said Buyer, then the Seller shall be released from all obligation of law and equity to convey said premises, and the Buyer shall forfeit all right thereto and to all money theretofore paid," Hill was without any right whatsoever in the property as of and after the last mentioned date.[11]

The conclusion just mentioned is of course arrived at through the doctrine of the Glock v. Howard and Wilson Colony Company case (see note 1.) supra, which is well expressed in Kelso v. Ulrich, 67 Cal.App.2d 698, at page 700, 155 P.2d 407, at page 409, citing Fisher v. Chaffee, 49 Cal.App.2d 97, 121 P.2d 51: "Where a vendee in possession has refused to complete his contract of purchase he may be considered to have abandoned the contract. He has by his wrongful act divested him-

---

[11] This circuit in Starr King School for the Ministry v. Kinne et al., 146 F.2d 8, 9, certiorari denied 325 U.S. 8, 50, 65 S. Ct. 1035, 89 L.Ed. 1970, stated: "This court in Federal Farm Mortgage Corp. v. Davis, 9 Cir., 132 F.2d 663, decided the California law with respect to the termination of contract for the sale of land on installment payments, containing the provisions of the instant contract set forth above. We there held that law to be that, on the nonpayment of installments when due, the vendor could, by notice, terminate the contract and that the vendee was not entitled to notice of a future termination with the right to make compensation in full and thereby acquire title to the land. * * * Since the contract was terminated before the petition in bankruptcy was filed, the estate in bankruptcy acquired no interest in the lands in question * * *."

self of the equitable estate which he had acquired under the writing and becomes a trespasser or tenant at will against whom his repudiated vendor may maintain ejectment."

■ The doctrine is expressed in Wilson v. Security-First Nat'l Bank, 84 Cal. App.2d 427, 430, 190 P.2d 975, 977, as follows: "The trial court decided this case strictly in accordance with the rule laid down in the leading case of Glock v. Howard & Wilson Colony Co., 123 Cal. 1, 55 P. 713, 43 L.R.A. 199, 69 Am.St.Rep. 17, that the buyer under a contract for the sale of real estate cannot after her default, without excuse therefor, maintain an action to recover the monies paid under the contract. So far as the law as set forth in this decision is concerned, its repeated affirmation in a long uninterrupted series of cases has caused it to become settled doctrine under the rule of stare decisis." In accord: Del Porto v. O'Donnell, 84 Cal.App.2d 548, 549, 190 P.2d 955. See also Mayer v. Beondo, 83 Cal.App.2d 665, 667, 189 P.2d 327, 190 P.2d 23.

■ The instant case was heretofore before us and after opinion and decision we were furnished with the very able opinion of the District Court of Appeal, 1st Dist., Div. 1, California, in the case of Barkis v. Scott et ux., 201 P.2d 830. In that opinion the Glock and other California cases are considered, compared, and distinguished. The court concludes that section 3275 of the California Civil Code must be considered in cases falling in the sphere of the Glock case. The section reads:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

The cited opinion holds that the Glock case in effect, as we read it, did take the above set-out civil code provision into consideration by the following language: "The contract is made to depend upon a condition precedent. By its terms no right is to vest in the vendee until certain acts of payment have been done by him, and a court of equity no more than a court of law will relieve a vendee, under such circumstances, from the penalties arising from the breach of such condition, in the absence of an equitable showing to excuse his default. None is here even attempted to be made." Glock v. Howard & Wilson Colony Co., 123 Cal. 1, 16, 55 P. 713, 718, 43 L.R. A. 199, 69 Am.St.Rep. 17.

■ It will be seen that we have attached little or no importance to the letter of Mrs. Wuchner purporting to cancel the contract and forfeit the sum already paid. We are of the opinion that Mrs. Wuchner could either accelerate the payments or cancel the agreement to convey but she could not do both at practically the same time. Having acted to accelerate the payments, she could not cancel the contract until circumstances showed that default had occurred in paying the whole unpaid part of the purchase price. She served no cancellation notice after such default occurred.

■ In the instant case we are not so sure that an equitable showing was attempted to be made or that it was not made. We do not intimate nor hint at any conclusion for we entertain none as to what the facts, fully brought out upon the issue presented by the application of § 3275, Cal.Civ. Code, would show. We do hold that the trial court should try that issue. Accordingly the order will be and is:

The judgment is reversed and the cause is remanded with instructions to find in accordance with this opinion that the contract had become of no effect prior to the tender of the unpaid balance of the contract purchase price of the property in suit by the trustee, through default in making purchase payment, unless the default should be excused through the application of § 3275, Cal.Civ.Code and the equitable principle expressed in the herein quoted portion of the Glock opinion.

Reversed and remanded.